OPINION OF THE COURT
Harold H. Hymes, J.
This is an action in Small Claims Court brought by the plaintiff for breach of warranty in the sale of a used car.
In response to a newspaper advertisement describing a 1969 Chrysler automobile as being "in good running condition” for $400, the plaintiff visited the defendant’s premises. The de *1048 fendant is a dealer in new and used cars. Plaintiff was accompanied by her nephew, for whom she was buying the automobile.
She testified that the salesman repeatedly assured her that the car was in good running order. The salesman testified that he made no such statement but that, in response to her repeated questions, he told her only that "it is a $400 car”. He also said that the nephew drove the car on the lot. He tried unsuccessfully to induce her to buy a more expensive automobile. At no time did he orally inform her that the car was being sold "as is” and "without any guarantee”.
In presenting the car order for her signature, the salesman put "x” marks in two places on the sheet. One was at the bottom of the document after the printed word "Signed”, on a line followed by the printed word "Purchaser”. The other "x” mark was placed in a white space near the center of the sheet. On the face of the car order, there appears the following handstamped legend: this car sold without any guarantee.
THIS CAR SOLD IN ITS PRESENT CONDITION AS IS. SIGNED —”.
The plaintiff’s signature appears in two places on the order blank. One is squarely on the line at the bottom of the printed sheet. The other is below the signature line which appears under the disclaimer which was handstamped on the order. The plaintiff contended that the disclaimer was stamped on the order form after she signed it. The salesman stated that the disclaimer was already on the order blank when it was signed.
The salesman admitted that, at the time of the sale, the car could not pass State inspection requirements. It was necessary to perform work on the brakes and lights. When the car was delivered to the plaintiff on October 31, she paid the balance due on the purchase price of the automobile. She also was required to pay an additional bill of $52 for the work performed on the brakes and lights to bring it up to inspection standards. The dealer defendant was the State inspection station that placed the inspection sticker on the car so that it could be registered.
Although there is no direct evidence that a Form MV-50 was delivered by the seller to the purchaser, the court can assume that such a form was completed by the seller, since he obtained the registration and license plates for the plaintiff at her expense.
There has been some question raised in the law about *1049 the extent that implied warranties under the Uniform Commercial Code apply to the sales of secondhand merchandise. (Regan Purchase & Sales Corp. v Primavera, 68 Misc 2d 858.) The Official Comment to the Uniform Commercial Code states: "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description.” (McKinney’s Cons Laws of NY, Book 62 Vi, Part 1, pp 260-261.) The Uniform Sales Act, which was replaced by the Uniform Commercial Code, was interpreted by courts to apply to secondhand goods. There appears to be no reason why the Uniform Commercial Code should not also apply to the sale of used goods (Ann., 22 ALR 3d 1387, 1401).
The seller in this case recognized the applicability of the implied warranties of merchantability. There were disclaimers printed on the car order and the car invoice which were of such small type that they could not be considered "conspicuous” under the definitions of the Uniform Commercial Code (§ 2-316, subd [2]; § 1-201, subd [10]). To meet the requirement of "conspicuous”, the seller handstamped the disclaimer on the face of the order. However, the court finds such disclaimer was ineffective in this case. First, it is evident from the position of the buyer’s signature below the signature line, that the disclaimer was stamped on the order after she had signed it. Secondly, that part of the disclaimer which set forth the words "as is”, was stamped over other printed material in such a way as to obscure those words and make it difficult, if not impossible, to read. The buyer cannot be expected to agree to a waiver which she could not read.
There are additional aspects of this case that require attention. The sale of secondhand automobiles by dealers is governed by statutory requirements under the Vehicle and Traffic Law. Subdivision (a) of section 301 of the Vehicle and Traffic Law states "that every motor vehicle sold or transferred for use on the public highways of this State by a dealer licensed under section four hundred fifteen of this chapter to any person other than another such licensed dealer must be inspected and bear a valid certificate of inspection prior to the delivery to the purchaser or transferee.” The burden of preparing a motor vehicle to pass inspection standards rests upon the dealer. Unless there is a separate agreement, it is not the purchaser’s responsibility to pay for the work and materials required to bring the vehicle up to inspection standards. It *1050 was, therefore, improper for the defendant to charge the plaintiff for this work.
In addition, section 417 of the Vehicle and Traffic Law requires that a retail dealer of secondhand motor vehicles deliver to the purchaser "a certification that said motor vehicle complies with such requirements of this chapter as shall be specified by the commissioner and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” It is of interest to note that when this certification was first required, it referred only to equipment such as lights, brakes and signals. This reference to specific equipment was later omitted, and the requirement that the car be in condition to give satisfactory service upon the public highway was made more general. This was not only a matter of protection to the consumer, but also a matter of highway safety. A vehicle that stalls on a highway is a safety hazard as much as an automobile without proper lights and brakes.
This "warranty of serviceability” goes beyond the implied warranties of the Uniform Commercial Code. It is a statutory warranty that cannot be waived. (Dato v Vatland, 36 Misc 2d 636; Winsey v Spitzer Motor Sales, 12 Misc 2d 56.)
The proof in this action showed that this vehicle broke down almost as soon as it was put on the road. Within a few days, the plaintiff had to install new points, a new battery, new alternator and new starter; a short circuit in the electric system had to be repaired; light bulbs had to be replaced and the car had to be towed off the road. The plaintiff’s expenses for repairs totaled $302.58. The amount paid to the defendant for this automobile was $416, including the tax.
The court finds that the defendant breached the implied warranty of merchantability under the Uniform Commercial Code, and breached the "warranty of serviceability” under section 417 of the Vehicle and Traffic Law.
Judgment is awarded to the plaintiff in the amount of $718.58.