OPINION OF THE COURT
Margaret Taylor, J.
On November 6, 1973 plaintiff purchased a used 1973 Ford Maverick automobile from the defendant Fordham Motor Sales, Inc. (Fordham). The motor vehicle, at that time, had been driven approximately 3,000 miles by its single prior owner, the wife of the owner of defendant Fordham. The vehicle was in good condition and had never been in an accident. The bill of sale given to plaintiff by defendant Fordham stated, "This car is guaranteed” and "is in safe condition at the time of sale.”
From November 6, 1973 until October 20, 1974 the vehicle was driven an additional 4,000 miles, solely by plaintiff. Between those two dates it was not involved in any accident. The vehicle was regularly serviced, such servicing including the inspection and maintenance of the fluid levels of the power steering mechanism. This mechanism between these two dates was neither repaired, removed nor disassembled.
The parties stipulated that on October 20, 1974 the reasonable market value of the vehicle was $1,313.73.
On October 20, 1974 plaintiff was operating the motor *981 vehicle on the Brooklyn-Queens Expressway at a speed of approximately 25 to 30 miles per hour. It was his testimony, which the court finds credible and accepts, that while he was operating the vehicle in a normal manner, the steering mechanism suddenly locked, causing him to lose control of the vehicle and causing the car to strike the highway guardrail. As a result of the collision with the guardrail, the automobile sustained extensive damage, the cost of repair of which was greater than the replacement value.
Plaintiff sued the defendant dealer Fordham and the defendant manufacturer Ford Motor Company, Inc. (Ford), for the property damages which he sustained.
Plaintiff called one witness in addition to himself, an expert mechanic who inspected the vehicle at the time it was towed into his service station from the scene of the accident. It was that expert’s testimony that the fluid level in the power steering cylinder was normal but that the cylinder was frozen, preventing the steering wheel from turning at all. This expert further testified that when the power steering cylinder was removed from the vehicle he observed that the piston within the cylinder was completely frozen, permitting no movement whatsoever. The inspection of the cylinder also revealed, according to this expert, a small dent near one end. His testimony was that this small dent could not and would not inhibit movement of the piston within the cylinder to the extent of causing a complete "freezing” of the mechanism but it could possibly have the effect of limiting the movement of the piston to some extent. It was his opinion, further, that it was highly unlikely that the cylinder had been dented in the accident of October 20, 1974.
The defendants produced one expert witness, a staff quality engineer employed by defendant Ford. It was the testimony of this witness that the cause of the failure of the power steering mechanism to operate properly, i.e., its locking and freezing, was the dent on the exterior portion of the cylinder. The expert produced by defendant Ford, however, testified that the steering mechanism which had been in Ford’s possession since the accident had not been disassembled or inspected internally.
The court accepts the testimony of plaintiff that the vehicle was not involved in any accident between the date of purchase and October 20, 1974 and that the steering mechanism locked immediately prior to the impact between the vehicle and the *982 guardrail. The court further accepts as credible the testimony of the expert witness called by plaintiff that the dent in the steering mechanism cylinder was not sufficient to cause a total locking or freezing of the mechanism.
In view of this finding, the court concludes from the proof that the accident was caused by a defect in the steering mechanism which caused it to lock and that such defect existed at the time the vehicle left the hands of both defendants Ford and Fordham.
Plaintiff’s action against both defendants seeks damages for negligence and breach of express and implied warranties. Although not denominated as such, plaintiff’s complaint also sets forth a claim against the defendants sounding in strict products liability. The proof at trial supported this claim and a claim against defendant Fordham based on a violation of section 417 of the New York Vehicle and Traffic Law.
To conform the pleadings to the evidence at trial and the law of the case as set forth below, the court deems the pleadings amended to add a cause of action against defendant Ford in strict liability in tort and a cause of action against defendant Fordham based on a violation of section 417 of the Vehicle and Traffic Law. (See, e.g., Martin v Dierck Equip. Co., 43 NY2d 583; Merchants Mut. Ins. Co. v Curry Corp., NYLJ Feb. 5, 1979, p 19, col 3; CPLR 3013, 3025; 3 Weinstein-KornMiller, NY Civ Prac, pars 3013.05, 3025.26, 3025.29; Siegel, NY Civ Prac, § 404.)
The court finds the defendant manufacturer, Ford, liable to the plaintiff under the theory of strict liability in tort. The preponderance of the credible evidence established that the steering mechanism of the 1973 Ford Maverick was defective at the time it left the hands of the defendant Ford in that plaintiff excluded all other causes of the accident not attributable to that defect. (See, e.g., Halloran v Virginia Chems., 41 NY2d 386, 388; Codling v Paglia, 32 NY2d 330.) The court further finds that at the time of the accident, plaintiff was operating the motor vehicle for the purpose and in the manner normally intended; that the defect in the steering mechanism caused the accident; that the plaintiff could not have discovered the defect and realized its danger; and that the plaintiff by the exercise of reasonable care could not have avoided the accident.
The court dismisses the causes of action against defendant *983 Ford based on negligence, breach of an implied warranty of merchantability and breach of an express warranty. No proof of negligence or express warranty as to Ford was adduced at the trial. Section 2-318 of the Uniform Commercial Code imposes liability for breach of implied warranties only in cases of personal injury, not property damage. Had plaintiff’s claim been for personal injuries, the court would have found liability based on the breach of an implied warranty inasmuch as it is the view of this court that section 2-318 of the Uniform Commercial Code (as amd in 1975) eliminates the need for privity in the case of the implied warranty of merchantability. (See, e.g., Martin v Dierck Equip. Co., supra, [Gabrielli, J., dissenting in part]; Official Comment, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-318, p 315; Prosser, Torts [4th ed], § 101; 2 Frumer and Friedman, Products Liability, § 16.04 [3] [a].)
With respect to the liability of defendant Fordham, the used car dealer, the proof did not establish any negligence on the part of that defendant and that cause of action is dismissed. The question relating to Fordham is: where a defect is traceable to the manufacturer of an automobile later sold as a used car, should liability attach to the used car dealer who did not create the defect but did place the defective automobile in the stream of commerce.
It is the policy of this State to protect purchasers of used vehicles from being sold defective vehicles. (Pierce v International Harvester Co., 61 AD2d 255 [citing the legislative history of Vehicle and Traffic Law, § 417, NY Legis Ann, 1954, pp 263-264].) This legislative policy, embodied in section 417 of the Vehicle and Traffic Law, requires retail sellers of used vehicles to expressly warrant in writing, inter alia, that the motor vehicle "is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.”
Defendant Fordham presented plaintiff with a bill of sale for the used car which stated: "(a) State law requires that sellers of second hand cars certify in writing to the buyer that each car is in safe condition at the time of sale, (b) This certification is a guarantee that the car is in safe condition at the time of sale.”
The evidence presented at trial established that, at the time of the sale of the used car to plaintiff by Fordham, there was a defect in the car’s steering mechanism which caused the *984 locking of that mechanism and, ultimately, the accident in question.
Accordingly, the court finds that defendant Fordham violated section 417 of the Vehicle and Traffic Law and the express warranty required by that statute. Such a violation imposes liability on that defendant for the damages sustained by plaintiff as a result of the accident.* (Pierce v International Harvester Co., supra; Natale v Martin Volkswagen, 92 Misc 2d 1046; Dato v Vatland, 36 Misc 2d 636.)
It is not necessary, therefore, for the court to consider whether defendant Fordham is liable under the theories of strict liability in tort or implied warranty of merchantability under section 2-314 of the Uniform Commercial Code. (Cf. Peterson v Backrodt Chevrolet Co., 61 Ill 2d 17 and Realmuto *985 v Straub Motors, 65 NJ 336, with Cintrome v Hertz Truck Leasing & Rental Serv., 45 NJ 434, and Cornelius v Bay Motors, 258 Ore 564. Cf. Swensson v New York, Albany Desp. Co., 309 NY 497. See, generally, 2 Frumer and Friedman, Products Liability, § 16A[4][b][iv]; § 18.03[3]; Strict Liability Not Applicable to Used Car Dealers Absent Actual Creation of Defect, 25 De Paul L Rev 574; Torts — Products Liability— Strict Liability in Tort Applied to Seller of Used Automobiles, 42 Tenn L Rev 426; Products Liability: Manufacturers’ Products Liability as It Relates to Used Automobile Dealers, 31 Okla L Rev 736. On the question of the application of implied warranties to used car dealers, see, generally, Official Comment, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 2-314, p 259; Prosser, Torts [4th ed], § 100; 2 Frumer and Friedman, § 16A [4] [5] [i].)
Judgment is granted in favor of plaintiff against both defendants in the sum of $1,313.73, together with interest from October 20, 1974 and appropriate costs and disbursements.

 The rationale for this application of strict statutory liability to a used car dealer is contained in the following excerpt from a law review article advocating that strict liability in tort be imposed upon such dealers:
Strict liability [of wholesalers and retailers] exists to vindicate the injured plaintiff by shifting the burden of loss to the party responsible for the product’s condition. Wholesalers and retailers do not generally create the defect within a product. Yet their integral role in the distributive process requires their accountability in strict liability for injuries resulting from a defective condition. Because of the realistic capabilities of an ongoing business enterprise, the wholesaler or retailer is deemed capable of controlling the condition of the product either directly or indirectly through pressure upon the manufacturer.
Several avenues of control are available to the used car dealer. First, he has the choice of refusing to purchase or otherwise acquire the particular used car (and offer it for resale) when he believes it is unsafe. Second, his expertise permits him to detect serious defective conditions through reasonable inspection. Finally, the used car dealer, like the original retailer or wholesaler, is capable of influencing the manufacturer as to the motor vehicle’s safety. The manufacturer has as intimate and important a business relation with the used car dealer as with the parites in the original distributive process. The used car business enlarges the market for the automobile industry’s products. More automobile parts are manufactured and sold though the increased reintroduction of used cars in the stream of commerce. Also, by reintroducing used cars into commerce, the used car dealer promotes the reliability of a particular model while providing free advertising to the manufacturer. Clearly, the used car dealer occupies a bargaining position against the manufacturer as strong as the wholesaler’s or retailer’s. * * *
The used car dealer’s role in controlling the condition of the used car, and profiting from its distribution justifies the imposition of initial loss upon him. Through the distribution of these used cars, the dealer perpetuates the risk of injury from a defective motor vehicle. As to indemnity the burden imposed upon parties in the distributive chain to seek the creator of the defect should likewise be imposed upon the used car dealer. The relative difficulty in obtaining indemnification is a consideration; however, in view of the used car dealer’s position in the commercial market, it should not outweigh the need for effective remedies to an injuried plaintiff. (Strict Liability Not Applicable to Used Car Dealers Absent Actual Creation of Defect, 25 De Paul L Rev 574, 577.)