OPINION OF THE COURT
James C. Harberson, Jr., J.
The three cases involved in this decision present an opportunity to outline two laws in New York which afford the purchaser of a used car protection from defects in the vehicle upon delivery and for a reasonable period subsequent to delivery of the automobile for certain key parts of the vehicle.
This decision must involve section 417 of the Vehicle and Traffic Law of New York and section 198-b of the General Business Law. An examination of each statute to ascertain how it differs from and how it complements the other law, helps clarify the duty of the used car dealer and the rights of a purchaser of a used vehicle upon delivery and following delivery.
Pursuant to section 417 of the New York Vehicle and Traffic Law, the Legislature gave the used car buyer a warranty that the car "is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” (Vehicle and Traffic Law § 417.)
Section 417 imposed upon the dealer the obligation he inspect the vehicle to ensure it complied with the requirements imposed by the regulations of the Commisioner of Motor Vehicles. The regulations are found in 15 NYCRR 78.13 (0.
15 NYCRR 78.13 (b) directs a dealer who sells secondhand cars to deliver to the purchaser a bill of sale on which is printed: "If this motor vehicle is classified as a used motor vehicle, (name of dealer) certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.”
15 NYCRR 78.13 (c) provides that all used cars must be inspected for certain items of equipment "and such equipment *150 must meet the standards set forth herein before the certification set forth in subdivision (b) of this section may be issued”. Paragraph (c) goes on to outline 18 separate items to be checked by the dealer who then can certify as required by section 417 that the used vehicle "is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.”
Section 417 further provides that the failure of the dealer to give the purchaser such a certificate, or a false certification is made for the inspection outlined above shall constitute a violation of section 417.
There is a further inspection of motor vehicles outlined at 15 NYCRR 79.21 required of all cars once per year before an annual registration is permitted. This is an additional inspection and does not satisfy the requirements of section 417 of the Vehicle and Traffic Law as outlined at 15 NYCRR 78.13 (c). (Rice v Burritt Motors, 124 Misc 2d 712, 713; Natale v Martin Volkswagen, 92 Misc 2d 1046, 1049-1050; Pierce v International Harvester Co., 61 AD2d 255, 259-261.)
At the time of the amendment to the precursor to section 417 in 1954 (L 1954, ch 86) the Motor Vehicle Department urged passage saying "This measure is primarily designed to protect the purchasers from being sold an improperly equipped or defective vehicle.” (1954 NY Legis Ann, at 264.) The comment noted that the dealer was in a better position to make the appropriate inspection rather than the purchaser to be certain that the car is not defective.
The various court decisions have made clear section 417 provides a "warranty of serviceability” which cannot be waived. (Dato v Vatland, 36 Misc 2d 636; Natale v Martin Volkswagen, 92 Misc 2d 1046, supra; Pierce v International Harvester Co., 61 AD2d 255, supra; Maure v Fordham Motor Sales, 98 Misc 2d 979; Rayhn v Martin Nemer Volkswagen Corp., 77 AD2d 394, appeal dismissed 53 NY2d 796; Matter of Ann-Son Auto Sales v Commissioner of Dept. of Motor Vehicles, 83 AD2d 759; McCormack v Lynn Imports, 114 Misc 2d 905; Pinelli v De Paula Chevrolet, 101 AD2d 643; Rice v Burritt Motors, 124 Misc 2d 712, supra; Cintron v Tony Royal Quality Used Cars, 132 Misc 2d 75; see, 30 Syracuse L Rev 264-265.)
In Vatland the court made the plain statement "[t]he warranty created by section 417 of the Vehicle and Traffic Law cannot be waived.” (Data v Vatland, supra, at 637.)
*151 Natale clearly states that compliance with section 417 was a "statutory warranty that cannot be waived” but that "[t]his was not only a matter of protection to the consumer, but also a matter of highway safety.” (Natale v Martin Volkswagen, supra, at 1050.)
Pierce agrees with Natale (supra) finding that section 417 "was designed in part to protect the public in general * * * [and] purchasers of used motor vehicles” (Pierce v International Harvester Co., supra, at 260.)
Maure cites Pierce (supra) saying "It is the policy of this State to protect purchasers of used vehicles from being sold defective vehicles.” (Maure v Fordham Motor Sales, supra, at 983.)
Pinelli commented that section "417 imposes an absolute and nonwaivable responsibility on used car dealers to deliver used cars 'in condition to render adequate and satisfactory service’ ” (Pinelli v De Paula Chevrolet, supra, at 644).
Rayhn clearly outlined section 417 finding "the Legislature intended to impose an absolute responsibility upon the used vehicle dealers in this State to sell only motor vehicles in condition to render adequate and satisfactory service upon highways at the time of delivery. The statute does not provide for any contractual waiver or limitation upon the responsibility for a satisfactory operating condition.” (Rayhn v Martin Nemer Volkswagen Corp., supra, at 396.)
Section 417 of the Vehicle and Traffic Law, then, imposes a nonwaivable obligation upon a used car dealer to deliver a car that complies with section 417 of the Vehicle and Traffic Law and 15 NYCRR 78.13. Once the car is delivered in such condition the requirements are met. It is for this reason that the Legislature enacted section 198-b of the General Business Law of New York (L 1984, ch 645).
Section 198-b is the "used car lemon law”. It was enacted because section 417 of the Vehicle and Traffic Law did not alone provide sufficient protection. Mollie Lampi, associate counsel for the State Consumer Protection Board in a memorandum to Governor Cuomo of July 9, 1984 pointed out that their bureau was receiving over 400 complaints per year involving cars not being in the condition as promised. She said: "Those complaints demonstrate that buying a used car today constitutes a costly and painful guessing game.” She continued: "Moreover, purchasers are often assured that a dealer will correct any defects later discovered although most *152 mechanical difficulties arise within ten days to a month after purchase the car owner, upon returning to the dealer, often finds that the oral repair promise is not honored, even though such failure to repair breaches New York State’s warranty of serviceability. [417].”
The Attorney-General Office’s memorandum to Senate No. 35-84 described section 198-b of the General Business Law as a supplement to section 417 of the Vehicle and Traffic Law, and expressly provides that nothing in section 198-b: "shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law.”
The memorandum goes on to point out many hundreds of documented complaints: "that used car buyers generally receive little attention after their purchase. Many defects arise within 30 days of the sale, but the dealer denies responsibility. Although the dealer, under Vehicle and Traffic Law, § 417, must certify in writing (MV-50 form) that a used car 'is in condition and repair to render under normal use, satisfactory and adequate service upon the public highway at the time of delivery’, the consumer must prove the defect existed at the time of the sale, and rely on the Department of Motor Vehicles to intercede on his behalf. This bill would insure that in each case certain minimal warranty safeguards are provided to consumers. It imposes no unreasonable demands on legitimate dealers, and only impacts negatively on those irresponsible dealers who regularly sell defective cars.”
Attorney-General Robert Abrams in his memorandum to the Governor concerning section 198-b dated July 13, 1984, stated:
"In the experience of the Attorney General’s Bureau of Consumer Frauds and Protection, the sale of defective used cars continues to be a major consumer problem in New York. While it is not unreasonable to expect any used car to suffer mechanical malfunctions in the course of ordinary use, our complaint files and those of other consumer agencies are replete with instances of serious defects manifesting themselves almost immediately after the sale. Indeed, it is not unusual to find cases where mechanical defects appear even before the consumer can drive home.
"Perhaps the most important protection for used car buyers is the non-waivable statutory warranty of serviceability afforded by section 417 of the Vehicle and Traffic Law. This statute imposes a strict responsibility upon dealers to certify *153 that a used car 'is in condition and repair to render, under normal use, satisfactory and adequate service’ at the time of delivery. In addition to this general standard, section 78.13 (b) of the Department’s regulations requires that used cars, at time of sale, meet nineteen specified safety-related equipment requirements. The Courts have given a liberal interpretation to § 417. See, for example, Ann-Son Auto Sales v. Commissioner, 443 NYS2d 496 (App. Div. 4th Dept. 1981); Rayhn v. Martin Nemer Volkswagen, 77 AD2d 394 (App. Div. 3rd Dept. 1980); and Pierce v. International Harvester, 61 App. Div. 2d 255, (App. Div. 4th Dept. 1978). Nevertheless, the precise reach of the statute’s general standard is uncertain, and can only be developed on a case-by-case basis.”
Taken together, sections 417 and 198-b provide a before and after protection to the used car buyer. Section 417 gives the buyer a warranty of serviceability that the car as delivered "is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway”. Section 198-b provides specific protection to the used car buyer as a legislated warranty as to certain parts for certain periods after the delivery of the used motor vehicle.
Section 198-b specifically directs a dealer, when arbitration is requested, to give a written notice to the customer of his "Used Car Lemon Law Bill of Rights”. This lists a 10-point outline of the consumer’s rights when problems arise.
In applying these legislative standards to the three cases before the court, I find that the defendant Leonard Boyce did not supply on his bills of sale the section 417 statement as provided under 15 NYCRR 78.13 (b). Because of this omission section 417 of the Vehicle and Traffic Law states that he is in "violation of this section.”
Mr. Boyce in each case relied on an inspection done at Parson’s Service Center. This inspection done by Parson’s was the one required by 15 NYCRR 79.21. This does not satisfy the section 417 inspection and certification as mentioned in 15 NYCRR 78.13 (c). Both inspections are required. The presumption created by the failure to conform the bill of sale is that the vehicle delivered by Boyce in each case failed to be "in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” (Vehicle and Traffic Law § 417.)
The courts have made it clear that the dealer is obligated to deliver the car without defect. In Rayhn (supra) the court *154 notes that: "The sale of the used vehicle to plaintiffs was not prohibited by law (cf. Carmine v Murphy, 285 NY 413) but the delivery of such vehicle without first making an appropriate inspection and making the vehicle comply with section 417 is implicitly prohibited.” (Rayhn v Martin Nemer Volkswagen, supra, at 397.)

SHARON ARMSTRONG v LEONARD BOYCE

In the case of Sharon Armstrong v Leonard Boyce, the plaintiff requests $796.26 for repairs to a car purchased from Boyce. Exhibit No. 3 shows that Boyce sold a used car to her husband on May 25, 1985. The bill of sale did not contain the warranty of serviceability clause required under section 417 of the Vehicle and Traffic Law and 15 NYCRR 78.13 (b). It appears that the car was inspected by Parsons Service Center on May 25, 1985 as required by 15 NYCRR 79.21.
The bill of sale gave a guarantee for 30 days or 1,000 miles that the dealer would pay 100% of the costs for parts and labor used during repair. This guarantee provided that all repair must be made in the dealer’s service shop. Tires, battery and glass were not guaranteed.
The plaintiff testified that the next day (May 26, 1985) the car started weaving and wobbling. Boyce was contacted and he requested the plaintiff to bring the car to his repair shop, Parsons Service Center. When Parsons saw them he told them the problem was beyond his ability to fix and referred them to Cheney Tire.
Cheney Tire determined the problems to be no belts left on the tires, no shock bolts, defective rear load levelers, defective sway bar links and a worn-out coil spring among other things. Cheney called Boyce to advise him of the problems. Cheney was advised by Boyce that he would not authorize the repairs because Cheney would not give him a dealer discount. The plaintiffs decided to have Cheney repair the problem without Boyce’s consent.
The muffler also needed to be replaced as part of the same breakdown on May 26, 1985. This was fixed by Cole Muffler. This work was completed on June 4, 1985. Later there were problems with the rear bumper as exhibited in photographs marked as Nos. 1 and 2 — it fell off due to rust. This bumper required repair including a new bumper and reinforcement.
Mr. Boyce in his defense asserted that he had driven the car *155 before he sold it to the Armstrongs. He submitted various repair bills to show how he had dealt with those parts that needed replacement. He further denied payment under the warranty because it was not done in a service shop of his choice and that part of the problems were not reported within the warranty period.
Mr. Boyce’s defenses are similar to those dealt with in other cases. He relies on the requirement that the plaintiffs failed to follow the warranty contract. The plaintiffs did report to him the problems with the car the day after they bought it and took the car directly to the service shop he selected. This service shop had approved the car for use on the road the same day that plaintiffs bought it and the next day told the plaintiffs that the problems were too complicated for him. Parsons Service Center then referred the plaintiffs to Cheney Tire and the defendant then refused to approve that repair facility.
The court finds that the defendant failed to comply with section 417 of the New York Vehicle and Traffic Law and 15 NYCRR 78.13. The vehicle sold to the plaintiffs was not acceptable for reasonable, normal road use when delivered. If an appropriate inspection had been done as outlined under 15 NYCRR 78.13 (c) the problems corrected by Cheney, Cole Muffler and Greenwood could have been discovered by a nonnegligent inspection.
The defendant complains that the bumper failed after the 30-day warranty period. The presumption of section 417 is that if such inspection required by that statute is not done then the car is delivered with the problems. Furthermore, since the rust problem led to the bumper falling off and such a problem is presumed to have been present at the time of delivery, the time interval between delivery on May 25, 1985 and the bumper falling off in early August 1985 would not be a defense.
The fact the defect did not manifest itself for a period beyond the warranty period of 30 days will not bar the plaintiffs’ recovery for the cost of the bumper. (See, Matter of Ann-Son Auto Sales v Commissioner of Dept. of Motor Vehicles, 83 AD2d 759, supra; Rice v Burritt Motors, 124 Misc 2d 712, supra.)
DECISION i
The court awards judgment to the plaintiff in the amount of *156 $796.26 together with costs and disbursements of $4.89 based on the law, the facts of the case and the exhibits.

GIGI COLE v LEONARD BOYCE

The claim of Gigi Cole v Leonard Boyce is for $79.25. Mrs. Cole’s claim is for repairs to the car delivered on May 25, 1985. The car was test driven by Mrs. Cole and her mother Mrs. Armstrong. They told Boyce that there were problems with the key turning in the ignition switch. There were problems with the shift and one tire after delivery of the car. The problem with the shift and windshield were corrected by the defendant. The plaintiff testified that there were continuing problems with a tire and the ignition switch.
The defendant failed on his bill of sale to comply with section 417 of the New York Vehicle and Traffic Law and 15 NYCRR 78.13 (b) creating the presumption that the car was delivered with those defects complained of in this case. The plaintiff seeks $79.25 for the cost of replacing the ignition which failed on June 26, 1985, the towing charge due to this failure and the cost of a shifter handle. The defendant agreed to pay for the handle, but claims he knew nothing of the ignition problem. He feels he is not responsible because the failure occurred after the 30-day warranty he gave on the bill of sale.
The court finds that the plaintiff did complain of the ignition problems before delivery of the car. The defendant was on notice of the ignition problems and the continuing problem through the warranty period culminating in the failure of the ignition system. This is covered under the expressed warranty of the defendant on his bill of sale. This problem did not happen after the warranty period expired but existed before and upon delivery of the car.
DECISION II
The court awards judgment to the plaintiff Gigi (Armstrong) Cole in the amount of $80.65 together with $4.89 in costs for this action.

GINGER ARMSTRONG v LEONARD BOYCE

The final case deals with the claim of Ginger Armstrong v Leonard Boyce. She seeks $1,500 together with $4.89 to cover the costs of this action.
*157 This claim is for the replacement value of a car the plaintiff purchased from the defendant Boyce on May 22, 1985. The bill of sale shows that no appropriate warranty of serviceability was expressed in writing as required by 15 NYCRR 78.13 (b). The plaintiff testified that she noticed a thumping sound from the right side of the car the day after she purchased the car. She said it was taken back to Boyce who test drove the vehicle. He testified he did not hear it but arranged to have the car checked after the test drive on May 25, 1985. Since May 25, 1985, was a Saturday he could not have the vehicle checked until the following week.
The plaintiff drove her car the next day and around 4:15 p.m. she drove through the parking lot of Productions Unlimited after leaving West Main Street. As she exited the parking lot she lost control of her vehicle and was struck by another car. The police accident report shows the accident happened and relates that the plaintiff failed to see the oncoming car that struck her.
The plaintiff testified she hit some pot holes in the Productions Unlimited parking lot and as she reached West Main Street the right side of her car dropped because the right front shock came through the shock tower. She stated this incident distracted her and that is why she failed to see the car that collided with her.
The plaintiff produced exhibits and testimony that the shock tower on the front right side of the vehicle was repaired in the past improperly and the evidence of this poor workmanship was concealed. She said that until the accident she could not have realized the problem. She requests judgment for the replacement of the whole car because she contends the accident would not have happened if the shock tower had not failed.
There is no question that if the accident occurred due to the failure of the shock tower the plaintiff would be entitled to the judgment she seeks (Maure v Fordham Motor Sales, 98 Misc 2d 979, supra, where market value on date of accident awarded).
The facts of this case are different. The plaintiff noticed the thumping sounds from the right shock area. Her mother testified she heard the same sounds. The dealer agreed to have the car checked the next business day which was to be early *158 the next week because May 25, 1985 was a Saturday. The plaintiff elected to continue to drive the car until the problem was checked out. It was the next day when the accident occurred.
The plaintiff testified she was going east on West Main Street when she decided to turn around by going through the parking lot and coming back out on to West Main Street above the traffic light and go west. She said that there were pot holes in the parking lot that caused the car some shock. She said as she came over the sidewalk to enter West Main Street the right front of the car dropped leading to the accident when she was distracted.
The police issued a traffic ticket to her for a violation of section 1143 of the New York Vehicle and Traffic Law for improper entry onto a roadway. She testified that this matter was dismissed. A check of court records shows that the matter was scofflawed due to her failure to appear and the charge was subsequently merged with another Vehicle and Traffic Law charge on September 19, 1986.
The court finds that at the time the car was delivered to the plaintiff it did have a defect in the right front shock well that could have been discovered by a nonnegligent inspection as outlined by 15 NYCRR 78.13 (c) (16) (iii). If the accident on May 26, 1985 was caused by the defect then the plaintiff would be entitled to a refund of the cost of repair or the purchase price of the vehicle.
It is the opinion of the court that notwithstanding the violation of section 417 of the Vehicle and Traffic Law of New York the defendant agreed to have the problem corrected as soon as he could. The plaintiff did not oppose this approach but decided to drive the car knowing of the problem she complained of to the dealer.
The court feels that the accident on May 26, 1985 was due to the action of the plaintiff from a review of all the evidence concerning that incident and the testimony of the plaintiff. The court feels that the risk of problems with the car shifted to the plaintiff when she did not leave it with the dealer on May 25, 1985. The court feels that the actions of the plaintiff in driving her car through (as she described) a pot hole filled parking lot in a car she knew was having problems was the *159 proximate cause of the accident and the weakened shock tower giving way.
DECISION II
The court dismisses the claim of Ginger Armstrong against the defendant and denies her request for $4.89 in costs and disbursements.