OPINION OF THE COURT
Franklin T. Russell, J.
Plaintiff brings this action in the Small Claims Part of the Town of Arcadia Justice Court for the recovery of the sum of $2,000 alleging that defendant sold plaintiff an automobile in violation of inspection requirements of the New York State Vehicle and Traffic Law and Rules and Regulations of the Commissioner of Motor Vehicles, and in violation of the New York Used Car Lemon Law. The parties presented their testimony and evidence before the Hon. Franklin T. Russell, Town Justice of the Town of Arcadia, on June 7,1991.
Plaintiff testified that on December 28, 1990, he traded in an automobile towards the purchase of a 1979 Oldsmobile Tornado, with mileage of 82,364 miles. Thereafter, and on December 30, 1990, plaintiff returned to defendant’s place of business, alleging that the vehicle had "no brakes” and was "jumping out of gear”. Again, and in early January 1991, plaintiff complained to defendant that the vehicle was "stalling” and complained on January 12 "the engine was knocking”. The parties agree that defendant repaired the cause of the vehicle jumping out of gear and the engine knocking.
Charles Cichon, an investigator for the New York State Department of Motor Vehicles (DMV), in response to plaintiff’s subpoena, testified that in late January 1991 he received a dealer complaint through DMV, primarily dealing with an engine knock and stalling problem. Mr. Cichon testified that about 2Vi months prior to this hearing, he examined the motor vehicle, found those matters to be fixed and closed his file.
It appears to the court that it must consider plaintiff’s claim in light of section 417 of the Vehicle and Traffic Law together with the Regulations of the Commissioner of Motor Vehicles *1021 (15 NYCRR part 78), General Business Law § 198-b (popularly known as the Used Car Lemon Law) and Uniform Commercial Code § 2-314.
A part of the defendant’s exhibit No. 3 was a "Statement of Purchase of Non-Guaranteed Used Car” and further entitled "as is-not guaranteed”. If, as plaintiff avers, relief is due under the Lemon Law, the execution of an "as is” agreement is void and contrary to public policy and the dealer shall be deemed to have given a warranty as a matter of law. (General Business Law § 198-b [d].) In its application of the Lemon Law, particularly General Business Law § 198-b (b) (2), which sets forth the minimal parts to be warranteed, this court will consider only the failure of those covered parts reported to the dealer during the first 30 days or 1,000 miles, whichever came first.
Plaintiff’s complaint herein recites "Now my mechanic tells me the frame is completely rotted and should never have passed NYS inspection when bought, and never will.” In applying General Business Law § 198-b, the court does not find the frame as one of those covered parts mandated therein. Further, it was not a matter brought to the attention of defendant within the 30 days prescribed by General Business Law § 198-b (b) (1) (b), nor even included in the complaint form completed by plaintiff on January 4, 1991 and forwarded to the New York State Department of Law. As the brakes and stalling appear to be the only two remaining complaints made during the 30-day period (the other two complaints having been corrected), the court will limit its analysis under the Lemon Law to them.
Mr. Joseph Latone, a principal in defendant, introduced into evidence defendant’s exhibit No. 1, a statement from Russ’ Repair Service, itemizing the inspection and related repairs on the 1979 Oldsmobile Tornado performed prior to the transfer of title to plaintiff. Relating to defects that plaintiff reported during the first 30 days that plaintiff alleges were not corrected (brakes and stalling), the court notes that exhibit No. 1 recites parts supplied including a right rear brake cable, brake rotor, brake fluid, rebuilt master cylinder, replacement of pitman arm and tiller arm. Defendant’s exhibit No. 2, likewise a repair invoice from Russ’ Repair Service on the subject motor vehicle, and dated January 14, 1991, reflects warranty repairs made to replace two additional parts. Further warranty repairs were made as set forth on defendant’s exhibit No. 4, a repair order dated January 23, 1991 replacing *1022 rocker arms and valve cover gaskets, and exhibit No. 5, a repair order dated March 11, 1991, replacing a portion of the exhaust system and other matters.
For the consumer to be entitled to return the motor vehicle and receive a refund of his purchase price, the consumer must establish that the problem has not been repaired after three or more attempts or that the motor vehicle was out of service for a total of 15 days or more during the warranty period. (General Business Law § 198-b [c] [2] [a], [b].) There is no testimony that three or more attempts were made at repair for the alleged brake and/or stalling problem, nor that the automobile was out of service for a total of 15 days or more during the warranty period. In fact, just the opposite seems to be a fair inference from the testimony. If the automobile had "no brakes” on December 30, and they were not repaired, it seems incongruous that plaintiff continued to operate the automobile such that he could experience stalling and engine knocking problems during the early part of January. From the foregoing, no recovery under section 198-b of the General Business Law is available to plaintiff.
In consideration of plaintiff’s warranty allegations, the court will now consider Vehicle and Traffic Law § 417.
"Upon the sale or transfer of title by a retail dealer of any second hand motor vehicle, intended for use by the buyer * * * upon the public highways, the vendor shall execute and deliver to the vendee an instrument in writing, in a form prescribed by the commissioner, in which shall be given the make, year of manufacture and identification number of the said motor vehicle, the name and address of the vendee, and the date of delivery to the vendee. Such notice shall also contain a certification that said motor vehicle complies with such requirements of this chapter as shall be specified by the commissioner and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” (Vehicle and Traffic Law § 417.)
"[A] plain reading of section 417 supports the conclusion that the Legislature intended to impose an absolute responsibility upon the used vehicle dealers in this State to sell only motor vehicles in condition to render adequate and satisfactory service upon highways at the time of delivery. The statute does not provide for any contractual waiver or limitation upon the responsibility for a satisfactory operating condi *1023 tian.” (Rayhn v Martin Nemer Volkswagen Corp., 77 AD2d 394, 396.)
"[A] sale of a used vehicle in New York State 'as is’ no longer means 'as is’ — but rather it now means 'as it should be’ under the Vehicle and Traffic Law and the commissioner’s regulations.” (Rice v Burritt Motors, 124 Misc 2d 712, 715.) The warranty of serviceability cannot be waived. (Natale v Martin Volkswagen, 92 Misc 2d 1046.)
There is no evidence before this court that defendant gave plaintiff a written certification as required under Vehicle and Traffic Law § 417. "A dealer who sells a secondhand motor vehicle to be used on the public highways of this State must deliver to the purchaser a statement as follows: 'If this motor vehicle is classified as a used motor vehicle, (name of dealer) certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.’ This statement shall be printed in at least 10-point type on the face of the dealer’s standard bill of sale which is provided to the retail purchaser upon delivery or acceptance of the vehicle.” (15 NYCRR 78.13 [b].) Defendant’s exhibit No. 1 merely indicates an inspection was done. But a New York State inspection is not equivalent to the requirements of Vehicle and Traffic Law § 417. If an "appropriate” inspection was not done, this does not in itself render the sales contract void nor prohibit the sale of the motor vehicle, but the delivery of the motor vehicle is implicitly prohibited under section 417 without the appropriate inspection having first been made. As such, to require plaintiff to accept the performance of the contract by defendant would violate the public policy as found in section 417. (See, Rayhn v Martin Nemer Volkswagen Corp., supra.) " 'It is a matter of common knowledge that many persons buy motor vehicles without having the time or facilities available to adequately check all of the equipment of the motor vehicles, while the dealer is generally in a position to do so. This measure [Vehicle and Traffic Law § 417] is primarily designed to protect the purchasers from being sold an improperly equipped or defective vehicle. However, it is also one which would greatly contribute to the safety of the motoring public, by reducing the possibility of defective vehicles being sold for operation upon the highways’ ”. (Pierce v International Harvester Co., 61 AD2d 255, 259-260 [quoting statement of Counsel and Deputy Commissioner of Motor *1024 Vehicles in urging enactment of section 417 in 1954 NY Legis Ann, at 263-264].)
Plaintiff and his witness, Mr. Cichon, both testified that the frame was rusted through and not repairable. This testimony was in no way refuted by defendant. That this could have occurred within a time span of less then four months from plaintiff’s purchase is so highly unlikely that this court’s conscience would be strained to find for defendant under the Code. "[T]he chassis frame cannot be in a deteriorated condition due to rust.” (15 NYCRR 78.13 [c] [16] [iii].)
In reviewing section 417 and its avowed purpose, as herein-before set forth, and the testimony that the frame was rotted through (about five weeks before this hearing), this court clearly believes that the frame was in such a deteriorated state on December 28, 1990, that any reasonable and appropriate inspection thereof would have rendered this automobile unsatisfactory for use upon the public highways. This, coupled with no evidence that defendant gave plaintiff the required written certification and the numerous repairs required after delivery, leads this court to conclude that defendant was not in compliance with Vehicle and Traffic Law § 417. (See, Pinelli v De Paula Chevrolet, 101 AD2d 643.)
"The presumption of section 417 is that if such inspection required by that statute is not done then the car is delivered with the problems.” (Armstrong v Boyce, 135 Misc 2d 148, 155.) Since the rust problem led to the frame problem, such problem is presumed to have been present at the time of delivery, and the interval between December 28, 1990 and about May 1, 1991 is not a defense. (Armstrong v Boyce, supra.) "The fact the defect did not manifest itself for a period beyond the warranty period [as mandated by General Business Law § 198-b] * * * will not bar the plaintiffs’ recovery” (Armstrong v Boyce, supra, at 155).
Therefore, this court finds for plaintiff under Vehicle and Traffic Law § 417.
Plaintiff’s complaint specified that "the frame is completely rotted and should never have passed NYS inspection when bought, and never will.” Mr. Cichon testified that he looked at the automobile about five weeks before this hearing and found the frame so rusted that it was not repairable. Defendant did not refute the condition of the frame, but objected to the timeliness of the allegation (beyond the 30-day period). While plaintiff has not specifically invoked the implied warranty of *1025 merchantability (UCC 2-314), the court believes the complaint implies its consideration. (The automobile is "goods” as defined in UCC 2-105 and defendant is a "merchant” under UCC 2-104.) The statute (UCC 2-314) sets forth
"(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *
"(2) Goods to be merchantable must be at least such as
"(a) pass without objection in the trade under the contract description; and * * *
"(c) are fit for the ordinary purposes for which such goods are used”.
The goods must be at least average, fair or of medium grade quality. It makes no difference that the merchant did not know or could not have discovered a defect if such would make a product unsafe. Implicit, though, in the sale of secondhand goods, is that the seller’s obligation should be appropriate to goods that may have experienced considerable use and wear. (See, Natale v Martin Volkswagen, supra.)
No 11-year-old motor vehicle, having in excess of 82,000 miles, could reasonably be expected to perform without continuous repairs being required. Plaintiff has not presented sufficient evidence as to the nature of the "no brakes” problem that has apparently not been fixed. The court finds no reference to this problem in plaintiff’s January 4, 1991 complaint to the New York State Department of Law (which refers only to "the cam has gone in my car”). As to the frame, in considering the extent of merchantability for an 11-year-old motor vehicle driven in excess of 82,000 miles, on which defendant declared no guarantee was being given, it would be reasonable to expect some rust, but not to such a degree that the vehicle will not survive beyond four months.
The question then arises as to whether defendant excluded or modified the implied warranty of merchantability as provided for in UCC 2-316. Without the language specifically mentioning "merchantability”, the implied warranty may be excluded by the expression "as is” where the buyer before entering into the contract has examined the goods as fully as he desired or has refused to examine the goods and any such defect would have been evident upon such examination. (UCC 2-316 [3] [a], [b].) It is important to note the distinction that a failure to examine the goods is not a refusal to examine them. *1026 No testimony has been advanced that plaintiff ever examined the 1979 Oldsmobile Tornado nor that he refused to examine it upon the request of defendant. Therefore, and irrespective of whether the alleged defects would have been easily discoverable from such an examination, defendant is precluded from relying upon any disclaiming the implied warranty of merchantability by the "as is” document signed by plaintiff’s mother and delivered to plaintiff. (While the "as is” document is void under General Business Law § 198-b and Vehicle and Traffic Law § 417, it could have been argued by defendant as a defense to UCC 2-314 if defendant had complied with UCC 2-316 [a], [b].)
Therefore, this court also finds for plaintiff under Uniform Commercial Code § 2-314.
Plaintiff seeks damages, based upon his testimony that the motor vehicle is inoperative in its present condition, for the return of the value of his trade-in ($1,350), a refund of five monthly installment payments on the 1979 Oldsmobile Tornado (totaling $498), for the purchase of new rocker arms ($75), for repairs to the muffler ($47) and for a new fuel pump ($116). Additionally, plaintiff cites the cost of a new frame in a sum exceeding $2,200. Plaintiff is aware that this court has no jurisdiction to grant an award in excess of $2,000.
In finding for plaintiff under UCC 2-314 and Vehicle and Traffic Law § 417, the court will award plaintiff the value of his trade-in ($1,350), a refund of five monthly installment payments on the 1979 Oldsmobile Tornado ($498), and the repair cost in the sum of $75 made by plaintiff for matters set forth on defendant’s exhibit No. 4. Upon payment thereof, it would seem appropriate that plaintiff relinquish title to the 1979 Oldsmobile Tornado to defendant.
At the commencement of this hearing, defendant requested attorney’s fees alleging an unwarranted action brought by plaintiff. Clearly, and from the court herein granting judgment to plaintiff in the sum of $1,923, defendant’s request is denied. Defendant’s motion for summary judgment is, likewise, denied.