*846 OPINION OF THE COURT
Franklin T. Russell, J.
The parties originally appeared in the Small Claims Part of the Town of Arcadia Justice Court on June 7, 1991, at which time a verdict was granted in favor of plaintiff in the sum of $1,923. Defendant appealed the verdict to the Wayne County Court, resulting in a reversal and the matter being remanded for a new hearing, by decision dated January 24, 1992 by Honorable Maurice E. Strobridge. The basis of the reversal was substantial justice was not done between the parties, to wit: appellant convinced the appellate court that it was caught unaware and should be given the opportunity to present what evidence it can to establish a defense. The matter was reheard in the Town of Arcadia Justice Court on February 28, 1992.
This decision from the rehearing will not recount the facts, which have been amply set forth in the decision of this court dated June 28, 1991 (Ireland v J.L.’s Auto Sales, 151 Misc 2d 1019) and the memorandum-decision of Judge Strobridge. At the inception of the rehearing, the parties agreed that the only issues to be heard were defendant’s evidence regarding compliance with Vehicle and Traffic Law § 417 and any evidence either party wished to submit relating to the court’s prior finding for plaintiff under Uniform Commercial Code § 2-314. The court did, however, state that any other issues either party wished heard, that were relevant to the original complaint filed with this court by plaintiff, would be heard. The parties offered no other issues.
"Upon the sale or transfer of title by a retail dealer of any second hand motor vehicle, intended for use by the buyer * * * upon the public highways, the vendor shall execute and deliver to the vendee an instrument in writing, in a form prescribed by the commissioner, in which shall be given the make, year of manufacture and identification number of the said motor vehicle, the name and address of the vendee, and the date of delivery to the vendee. Such notice shall also contain a certification that said motor vehicle complies with such requirements of this chapter as shall be specified by the commissioner and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” (Vehicle and Traffic Law § 417.)
"A dealer who sells a secondhand motor vehicle to be used *847 on the public highways of this State must deliver to the purchaser a statement as follows: 'If this motor vehicle is classified as a used motor vehicle, (name of dealer) certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.’ This statement shall be printed in at least 10-point type on the face of the dealer’s standard bill of sale which is provided to the retail purchaser upon delivery or acceptance of the vehicle. ” (15 NYCRR 78.13 [b] [emphasis added].)
The court received into evidence defendant’s exhibit number 1, namely a photocopy of the bill of sale for the vehicle in question, which bore the date January 2, 1991. Interestingly, plaintiff offered a photocopy of the front page of the same bill of sale, which the court received into evidence, and which bore the date December 27, 1990. In considering the aforementioned section of 15 NYCRR 78.13 (b), that the statement is to be provided "to the retail purchaser upon delivery or acceptance of the vehicle,” plaintiff testified that he took delivery on December 27, 1990. If defendant’s exhibit is to be accepted, then clearly it was not delivered in keeping with the appropriate requirements of the Commissioner, as the document could not have been delivered before January 2, 1991. Defendant could offer no explanation for the altered date on its exhibit. However, as plaintiff has admitted signing and receiving his copy of the front page on the date he took delivery, December 27, 1990, this court will not pursue the altered date further.
Defendant calls the court’s attention to the reverse side of exhibit number 1 whereupon the following statement appears: "If this motor vehicle is classified as a used motor vehicle, JL’s Auto Sales & Leasing certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.”
The issue as argued by defendant relates to the placement of the required certification on the reverse side of the bill of sale. Defendant avers that he would not have received his license to sell used automobiles if his documents did not conform to the State requirements. To this end, defendant advises the court that his paperwork was reviewed and approved by a regional inspector for the Department of Motor Vehicles, although no such written approval is offered in evidence. (Defendant has provided the court with a portion of a document defendant states is known as "Motor Vehicle *848 Dealer Registrations” [particularly section C], which provides, in part, that motor vehicle applicants will be interviewed prior to their application being approved in order to examine their bill of sale, amongst other documents, for validity.) However, and even presuming an approval of defendant’s bill of sale by a regional inspector, which this court is not willing to assert is dispositive of compliance with the law, this court does not find this argument persuasive in arriving at its decision.
Further, defendant asks the court to consider Lupa v Jock’s holding that a disclaimer of an implied warranty of merchantability is not inconspicuous on the back of a contract where the front of the contract contains clearly marked language such as “see reverse side for guaranty” (although the disclaimer was found not to be “conspicuous” for other reasons). (131 Misc 2d 536, 537.) Defendant points out that on the bottom of the front side of the bill of sale herein received into evidence (defendant’s exhibit number 1), and approximately one inch below plaintiffs signature, and in large, dark print appears “see other side for additional terms”. In due deference to defendant, the certification on the reverse of the bill of sale herein is conspicuous. (No testimony was presented by either party on whether the statement was in 10-point type; as such the court is not addressing that point.) The argument being advanced by defendant, by implication, is that “on the face” is extended to beyond the first page of a document.
The court has devoted considerable effort to determine what the phrase “on the face” means. Most of what can be found relates to conspicuousness of a notice, not to the avowed purpose of the notice. The Vehicle and Traffic Law has been of no assistance. Defendant, relying upon Lupa (supra), proffers that “on the face” includes both sides of the document where a clear reference on the front is made to terms on the back. This court finds some support, although not in total accord, for defendant’s argument. The following represents a sampling:
(1) Cases set forth in the case notes following section 2-316 in CLS Consolidated Laws of NY, Book 35, Uniform Commercial Code, at 431, relating to the conspicuousness of the disclaimer of warranties being on the reverse side of a document (of which no case is from New York): warranty not excluded where reverse page did not require purchaser’s signature (Alderman Ford Sales v Bailey, 154 Ind App 632, *849 294 NE2d 617); where "on face” of lease immediately above lessee’s signature, attention was called to additional terms being on the reverse side, and disclaimer was in capital letters with remainder of text on reverse in smaller type, held that disclaimer was conspicuous (Todd Equip. Leasing Co. v Milligan, 395 A2d 818 [Me]).
(2) New York Personal Property Law §§ 302 and 402, which relate to various notices to the buyer required in retail installment contracts, require that the specific notice provision appear directly above the buyer’s signature (which may be at the end of several pages).
(3) Comment 1, following UCC 3-106, relating to a holder of a negotiable promissory note being able to determine the amount payable, must be a computation which can be made from the instrument itself. (See, DH Cattle Holdings Co. v Reinoso, 176 AD2d 1057.) (There appearing to be no requirement that the instrument be contained on one page.)
(4) UCC 2-316 (2) in addressing the exclusion of all implied warranties of fitness finds sufficiency by the phrase "There are no warranties which extend beyond the description on the face hereof.” Such might imply, at least as to this implied warranty under the UCC, that "on the face” could be other than the first page.
From the foregoing, it may be inferred that "on the face” extends beyond the first page where clear reference is made directly above the buyer’s signature or where buyer’s signature is required at the end of the printed terms and conditions.
Language which would tend to support the argument that "on the face” is the first page of a document may be seen from the following:
(1) New York Business Corporation Law § 508 (c) lists specific requirements to be "upon the face” of stock certificates. Referring to a stock certificate, the "face thereof’ is deemed to be the front side. (Ling & Co. v Trinity Sav. & Loan Assn., 482 SW2d 841 [Tex].)
(2) As to commercial paper, distinctions are made between "the instrument” (UCC 3-105) and requirements that certain matters be "on the face of the instrument”. (See, Star Dairy v Roberts, 37 AD2d 1038; Manufacturer’s Hanover Trust Co. v Eisenstadt, 64 Misc 2d 397.) (A reasonable interpretation being that there is a distinction between "on the face” and the whole instrument itself.)
*850 (3) "Normally, a maker or drawer signs in the lower right-hand corner on the face of the instrument while an endorser signs on the back.” (80 NY Jur 2d, Negotiable Instruments and Other Commercial Paper, § 51, at 89 [emphasis added].) "Customarily, properly, and in accordance with the literal meaning of the term, an endorsement is written on the back of the instrument, but an intent to endorse may be effectuated by a signature or writing on the face of the instrument.” (Id., § 257, at 282, citing Metz v Taglieri, 29 Misc 2d 841 [emphasis added].) "An acceptance may consist of the drawee’s signature alone. The mere signature of the drawee on the instrument is a sufficient acceptance, whether, as customary, it is written vertically across the face, or in any other place, even on the back”. (80 NY Jur 2d, op. cit., § 439, at 483 [emphasis added].) Relating to a signer’s liability on an instrument, "[o]ne may be liable as a maker even though he signs on the back of the instrument for want of room on the front. ” (Id., § 51, at 90, citing Olansky v Berlin, 37 Misc 775 [emphasis added].)
(4) Uniform Commercial Code § 3-110 (1) sets forth a designation that an instrument is payable to order "when it is conspicuously designated on its face as 'exchange’ or the like and names a payee.” The Court of Appeals in Hartford Acc. & Indent. Co. v American Express Co., in describing the checks which were the subject matter of this decision involving misspelled names, refers to "the recipients’ addresses appeared beneath their names on the face of the checks.” (74 NY2d 153, 158.)
(5) Klar v H. & M. Parcel Room, a bailment case involving a limitation of liability printed on a parcel check, clearly distinguishes between "on the face” of the parcel check and "on the reverse side”. (270 App Div 538, affd 296 NY 1044.)
It appears clear to this court that the weight of these various authorities would differentiate between "on the face” (on the front) and "on the back” (on the reverse). While there appears to be some authority for accepting the reverse as being part of "the face” where it is necessary that the terms continue on the reverse and where there is specific direction to the individual above his signature to terms on the reverse and/or where a signature is required on the reverse at the end of the terms and conditions, none of these fit the evidence in the matter before this court. In viewing these criteria with defendant’s bill of sale herein, the required statement is on the reverse (although plaintiff’s attention is not called to that fact directly above the space for his signature on the front). *851 Further, defendant has presented no evidence plaintiff signed on the reverse, but only that he signed on the front. "[A] plain reading of section 417 supports the conclusion that the Legislature intended to impose an absolute responsibility upon the used vehicle dealers in this State to sell only motor vehicles in condition to render adequate and satisfactory service upon highways at the time of delivery. The .statute does not provide for any contractual waiver or limitation upon the responsibility for a satisfactory operating condition.” (Rayhn v Nemer Volkswagen Corp., 77 AD2d 394, 396.)
From the assembled collection of uses of "on the face”, and considering the apparent legislative intent in enacting Vehicle and Traffic Law § 417, namely that an absolute responsibility be placed upon used vehicle dealers to perform certain acts and provide certain notices to the buying public, this court concludes that, for Vehicle and Traffic Law § 417, "on the face” means on the front page of the document.
Further, plaintiff testified, and which is uncontroverted, that defendant gave him a photocopy of only the face (front) of the bill of sale at the time of delivery of the automobile and, therefore, plaintiff did not receive the required statement. Plaintiff admits being given the original bill of sale to sign. There is no testimony that plaintiff’s attention was specifically called to the legend or terms on reverse and while plaintiff is not excused from his failure to read the reverse, he testified that his attention was riveted to the figures on the front of the document. "[T]he law presumes that one who is capable of reading has read the document which he has executed * * * and he is conclusively bound by the terms contained therein”. (Marine Midland Bank v Embassy E., 160 AD2d 420, 422.)
An additional component of the requirement for a dealer selling a secondhand motor vehicle is that it "must deliver to the purchaser” the required statement. Delivery is "liberation; release; transference; surrender.” To deliver is "to hand over; surrender; transfer possession of.” (Funk & Wagnalls Comprehensive Std Inti Dictionary 339 [Bicentennial ed].) It is "[t]he act by which the res or substance thereof is placed within the actual or constructive possession or control of another.” (Black’s Law Dictionary 515 [4th ed].) As such, this court concludes that the appropriate statement was not delivered to the purchaser (plaintiff).
Defendant has failed to establish that it made an appropriate inspection and provided the required certificate, such *852 failures constituting violations of section 417 of the Vehicle and Traffic Law. (See, Pinelli v De Paula Chevrolet, 101 AD2d 643.)
Defendant has called the court’s attention to the following sentence in 15 NYCRR 78.13 (b): "The willful or repeated failure to deliver such statement as herein required shall be considered a violation of this regulation.”
Defendant’s reliance on this statement as being relevant to this action is misplaced. The statement refers to a violation of the Motor Vehicles Regulations (tit 15), not to Vehicle and Traffic Law § 417.
Relating to the second issue before this court, namely whether defendant excluded or modified the implied warranty of merchantability as provided for in UCC 2-316, the court upon examining the reverse side of the aforementioned bill of sale (the bill of sale having been handed to plaintiff for his signature as aforesaid), clearly finds the conspicuous appropriate disclaimer of the warranty. Therefore, without further comment, this court does not find for plaintiff under the UCC. The fact that plaintiff did not read the disclaimer is of no import.
In finding for plaintiff under Vehicle and Traffic Law § 417, the court will award plaintiff the value of his trade-in ($1,350), a refund of five monthly installment payments on the 1979 Oldsmobile Toronado ($498), and the repair costs in the sum of $75 made by plaintiff as discussed in the prior decision of this court. Upon payment thereof, it would seem appropriate that plaintiff relinquish title to the 1979 Oldsmobile Toronado to defendant. Judgment for plaintiff in the sum of $1,923, plus the costs of this action.