■ JOHN GRACE & Co., INC., et al., Respondents-Appellants, v TUNSTEAD, SCHECHTER & TORRE et al., Appellants-Respondents. —Order, Supreme Court, New York County (David B. Saxe, J.), entered September 10, 1991, which granted reargument of said court's order dated April 18, 1991, and, upon reargument, granted defendants' motion for summary judgment as to the first cause of action and adhered to its denial of defendants' motion for summary judgment as to the second and third causes of action, unanimously modified, on the law, to the extent of denying defendants summary judgment as to the first cause of action, granting defendants summary judgment as to the second cause of action, and granting defendants summary judgment as to the third cause of action only to the extent that it seeks damages for the failure to bring a third-party action for contribution and indemnity in *Dormitory Auth. v Michael Baker Jr. of N. Y. Inc.,* and otherwise affirmed, without costs.

In this legal malpractice action, the corporate plaintiffs have asserted three causes of action against the defendants, a law firm and two of its partners. The first cause of action is

based upon defendants' alleged failure to timely commence a breach of contract action on behalf of plaintiffs against the Board of Education of the Bay Shore Union School Free District (Bay Shore). It is agreed that as of October 1, 1986, any causes of action that plaintiffs may have had against Bay Shore were time barred. In support of their motion for summary judgment, defendants submitted the affidavit of defendant Michael Torre. Therein it was alleged that plaintiffs did not seek defendants' assistance with the Bay Shore matter until December 6, 1986. This was done through a letter from plaintiffs' then chairman of the board, John Vittiglio. That letter and a copy of defendants' records, showing that the Bay Shore file was opened on December 8, 1986, with the first billing activity being a December 19, 1986 meeting with Vittiglio, were submitted to the motion court. Plaintiffs responded with an affidavit from Vittiglio wherein it was stated, *inter alia,* that defendants were retained to handle the Bay Shore matter "as early as September 1986 through [his] conversations with Michael Torre, and continued * * * through September 1988." The Vittiglio affidavit further stated that, "At the initial onset in September 1986, Defendants *[sic]* became fully aware of the situation and began to advise me as to the possible remedies and causes of action in order to protect [plaintiffs'] interests."

By order entered April 18, 1991, the motion court, *inter alia,* denied summary judgment as to the first cause of action because there was an issue of fact as to whether defendants were negligent in failing to apply for an extension of time in which to serve a notice of claim against Bay Shore pursuant to Education Law § 3813 (2-a), since the 6 year statute of limitations had not run. This was apparently due, in part, to the fact that the motion court failed to apply the 1 year statute of limitations set forth in Education Law § 3813 (2-b) instead of the 6 year statute of limitations for contract actions set forth in CPLR 203 (a) and 213 (2).

Upon reargument, by order entered September 10, 1991, the motion court concluded that the documentary evidence established that defendants were retained "in or about December 1986" and that because the action had to have been commenced by October 1, 1986, no claim for legal malpractice could be maintained on the first cause of action.

We disagree. There are conflicting affidavits and the documentary evidence, which certainly bolsters the defendants' contention, nevertheless is not dispositive. The credibility of the affiants and the documentary evidence creates an issue of

fact as to when defendants were retained, thereby precluding granting summary judgment on the Bay Shore claim.[1]

Plaintiffs' second cause of action alleges legal malpractice with respect to plaintiffs' claims against their insurance carrier, broker and consultant related to a fire damage loss on plaintiffs' property. Defendants commenced an action against the insurance carrier, Twin City Fire Insurance Company (Twin City), for failing to pay on the claim. Separate actions were commenced in 1983 against the broker, National Preferred Risks, Inc. (National Preferred), and in 1984 against Corroon and Black Company (Corroon), which plaintiffs had hired to review, study and recommend changes in their insurance policies. In July 1985, defendants moved for summary judgment in the Twin City case and Twin City cross-moved for summary judgment. Twin City prevailed on the ground that the property damaged by the fire was not covered by the policy. The National Preferred and Corroon actions were subsequently settled, post-commencement of the instant action seeking $2,225,300 on this claim, for approximately $280,000.

The second cause of action herein specifically alleges, *inter alia,* that plaintiffs were damaged as a result of defendants' (1) failure to amend the Twin City action to include National Preferred and Corroon, (2) failure to move to consolidate the National Preferred and Corroon actions with the Twin City suit, (3) failure to resist the Twin City motion for summary judgment, and (4) unsuccessful motion for summary judgment being made prior to consolidation. Moreover, it is further alleged that this negligence caused the actions against National Preferred and Corroon to be at risk of dismissal.

Defendants sought summary judgment as to the second cause of action on the following grounds: (1) the claim was not legally cognizable because the Twin City dismissal was due to the failure of the policy to cover the damaged property; (2) it was pure speculation to suggest that amendment or consolidation with the National Preferred and Corroon actions would have prevented the dismissal of the Twin City complaint; (3)

---

1. After oral argument of this case on April 21, 1992, defendants requested that this Court take judicial notice (CPLR 4511) of the September 5, 1991 decision after trial of the Supreme Court, Nassau County (McCabe, J.), in *Tunstead, Schechter & Torre v Grace & Co.* (Index No. 21753/88). That order states in pertinent part, *"apparently* it [Bay Shore case] was not brought to the attorneys' offices until some fourteen months later" (emphasis supplied) at which time "Torre admitted he told John Vittiglio that this claim was time barred". Since this is not an unequivocal finding by the trial court, the issue remains one of credibility.

the settlement of the National Preferred and Corroon actions eliminated the risk of dismissal; and (4) contrary to plaintiffs' assertions in opposition to the motion, the complaint did not allege that defendants' actions impaired plaintiffs' ability to recover a larger settlement. Plaintiffs, in opposition, argued that by virtue of their settlement, they were damaged in the amount of $1.8 million. This settlement was allegedly the result of defendants' loss of the Twin City motion for summary judgment and failure to prosecute the National Preferred and Corroon actions diligently. Plaintiffs offered no proof of their damages.

In light of the basis for the dismissal of the Twin City complaint, the motion court's order of April 18, 1991 granted summary judgment as to that portion of the second cause of action. However, with respect to that portion pertaining to the National Preferred and Corroon actions, summary judgment was denied because factual issues as to whether defendants had negligently prosecuted those actions existed.

Upon reargument, defendants alleged, *inter alia,* that as a result of an April 8, 1991 order of the Supreme Court, New York County (Herman Cahn, J.) in *Grace & Co. v National Preferred Risks* (Index No. 18417/87), the remainder of the second cause of action was barred by collateral estoppel and *res judicata.* In that action, defendants' claim for legal fees was resolved by the April 8, 1991 order which imposed a statutory lien pursuant to Judiciary Law § 475 in defendants' favor in the amount of $20,000. Plaintiffs had unsuccessfully argued there that defendants were liable for legal malpractice (and were being sued for such in the instant action) and, therefore, were not entitled to any compensation for their legal services.[2] As such, defendants alleged that plaintiffs were collaterally estopped from bringing this claim because the same issue had been resolved by the April 8, 1991 order and that there had been a full and fair opportunity to litigate the issue. *Res judicata* was said to be applicable because there was an identity of the parties, a common cause of action and a final disposition as to matters actually litigated and those that could have been litigated.

By its September 10, 1991 order, the motion court in the case at bar rejected defendants' lien theories, concluding that

2. It appears from the court's April 8, 1991 order that testimony was taken at the fee claim hearing but that transcript was not included in the record on appeal. An affidavit by John Vittiglio making the aforementioned argument in that action is included in the record on appeal.

the only issue before the fee dispute court was "the nature, extent and value of those services prior to the [defendants'] withdrawal * * * [and] defendants' alleged liability to plaintiffs for legal malpractice in this action could not have been raised or litigated."

We find that the motion court properly granted summary judgment to defendants as to the Twin City suit but erroneously denied summary judgment with respect to the National Preferred and Corroon actions. "To prevail in an action for legal malpractice, the plaintiff must show that the attorney was negligent and that 'but for' the attorney's negligence, the plaintiff would have prevailed in the underlying case" *(Pacesetter Communications Corp. v Solin & Breindel,* 150 AD2d 232, 233 [1989], *lv dismissed* 74 NY2d 892 [1989]). Plaintiffs herein cannot and have not made such a showing with respect to the prosecution of the Twin City action. The dismissal of that action occurred as a matter of law. In addition, this result would not have been altered by the amendment of that action to include the National Preferred and Corroon actions or consolidation therewith.

As to the National Preferred and Corroon actions, we find that those claims are barred by collateral estoppel and *res judicata* and, moreover, that plaintiffs have failed to present any evidence either of causation or their damages as a result of the alleged malpractice. In contesting defendants' fee claim in plaintiffs' action against National Preferred and Corroon, plaintiffs asserted legal malpractice as an affirmative defense. By virtue of the affidavit by John Vittiglio on behalf of plaintiffs, it is clear that plaintiffs placed the matter of defendants' alleged legal malpractice in issue and lost. Therefore, in fixing the value of defendants' services, the court necessarily concluded that there was no malpractice *(Kagan Meat & Poultry v Kalter,* 70 AD2d 632 [1979]; *Blair v Bartlett,* 75 NY 150, 154 [1878]; *see also, Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143 [1980] [client estopped from maintaining legal malpractice action against attorney where client could have but failed to raise issue as a defense in prior action for fees for the same services]). Plaintiffs argued to the motion court (1) that the fee claim hearing was informal and did not afford an opportunity for the full and fair litigation of the issue; (2) that the issues considered and decided by the fee claim court were not identical to the issue before this Court; and (3) that there was a statement placed on the record at the fee claim hearing, without objection, that the hearing would not affect the merits of the legal malpractice action. However,

these arguments are mere bald allegations by counsel, unsupported by any proof, such as the transcript of the fee claim hearing. Thus, the record before this Court establishes (1) that there is identity between the parties and of the key issue, (2) that there was a full and fair opportunity to litigate the issue because plaintiffs raised the issue as an affirmative defense in the fee claim hearing, and (3) that since the fee claim and the legal malpractice claim arose from the same transaction, the decision to award fees necessarily included the finding of no malpractice. Accordingly, plaintiffs' legal malpractice claim based upon the same services at issue before the fee claim court is barred by collateral estoppel and *res judicata (see, O'Brien v City of Syracuse,* 54 NY2d 353 [1981]; *Matter of Halyalkar v Board of Regents,* 72 NY2d 261 [1988]; *Chisholm-Ryder Co. v Sommer & Sommer, supra; Kagan Meat & Poultry v Kalter, supra; Blair v Bartlett, supra).*

Even if the second cause of action as to the National Preferred and Corroon actions was not precluded by collateral estoppel and *res judicata,* plaintiffs' failure to present anything other than conclusory and vague allegations as to causation and damages is fatal to the claim *(see, Smith v Johnson Prods. Co.,* 95 AD2d 675, 676 [1983]). Plaintiffs' contention that the National Preferred and Corroon actions could have been settled for 10 times the amount actually settled upon is not substantiated.

Plaintiffs' third cause of action alleges that defendants negligently represented plaintiffs regarding the Dormitory Authority of the State of New York (Dormitory Authority), a project to construct an energy plant on the campus of Bronx Community College. Specifically, it is alleged (1) that the statute of limitations was allowed to run prior to commencement of an action and that as a result, a $410,000 claim was lost; (2) that defendants failed to assert a counterclaim before the statute of limitations ran; (3) that defendants failed to allege an offset; and, (4) that they failed to bring a third-party action for indemnity and contribution against a subcontractor. The motion court denied defendants' motion for summary judgment, concluding that there were issues of fact as to each aspect of the claim. It adhered to that position on reargument.

We disagree, in part. Summary judgment was properly denied with respect to the 6 month statute of limitations. It is clear from the record that defendants were timely retained to handle the Dormitory Authority matter and that plaintiffs never authorized commencement of the action, apparently for some business reason. It is also clear that the statute ran

without an action being filed. Indeed, the Dormitory Authority commenced an action against plaintiffs. However, there is a real issue of fact as to whether defendants failed to advise plaintiffs of the 6 month statute of limitations, as disputed in affidavits by Vittiglio and Torre.

With respect to the failure to bring a third-party action for contribution and indemnity against a subcontractor, summary judgment should have been granted to defendants. Claims over for contribution and indemnity do not accrue until the party interposing those claims has paid the underlying claim *(Tavernier v Toner,* 155 AD2d 948 [1989]). Since there has been no disposition of the Dormitory Authority action, plaintiffs' contribution and indemnity claims remain viable *(supra).* Concur—Carro, J. P., Milonas, Kupferman, Asch and Smith, JJ.