[602 NYS2d 894]

FRANK ALTAMORE, Appellant, v RONALD FRIEDMAN, Respondent.

Second Department, October 25, 1993

## APPEARANCES OF COUNSEL

*Meiselman, Boland, Reilly & Fugazzi,* Mineola *(Patricia A. Corry* on the brief), for appellant.

*Martin, Clearwater & Bell,* New York City *(Barbara D. Goldberg* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Invoking the doctrines of res judicata and collateral estoppel based on a prior arbitration award, the defendant, Ronald Friedman, an attorney, moved to dismiss this legal malpractice action brought against him by the plaintiff, Frank Altamore, his former client. That motion was granted, and this appeal ensued.

Friedman and Altamore stipulated in writing to binding arbitration conducted under the auspices of the Nassau County Bar Association. The arbitration panel, after a hearing in which they heard both sides, including Altamore's expert, determined that Friedman performed the legal services for which Altamore retained him. Shortly thereafter Altamore sued Friedman to recover damages for legal malpractice. The Supreme Court confirmed the arbitration award and dismissed the malpractice action. We affirm. Under the facts of this case, the arbitrators' award precludes Altamore's malpractice action.

By way of background, in July 1985 Newsday discharged Altamore from its employ, stating that he had not appeared for work for over eight years, and that although he stated periodically that he intended to return to work, the medical findings were unanimous in ruling it out. The findings in-

cluded those of Altamore's physician who stated that Altamore had a permanent disability of severe, constant vertigo.

Pursuant to its contract with Newsday, Altamore's union, Long Island Typographical Union 915 (hereinafter the Union) served a demand for arbitration upon Newsday, claiming that Newsday discharged him unfairly and in violation of the collective bargaining agreement between them.

Altamore engaged Friedman as his personal attorney in the employment arbitration. The Union agreed in writing that Friedman would represent Altamore personally, and Friedman did so over the course of the hearings, as was noted by the Union-Newsday arbitrator in his opinion and award.

From June 20, 1986 through January 22, 1987, over 12 sessions, the Union-Newsday issue was arbitrated. The arbitrator, in keeping with the arbitration demand, framed the issue as being whether Newsday had violated its agreement with the Union by unfairly discharging Altamore and, if so, what was the remedy for the violation. The arbitrator's opinion and award held that there was just cause for Altamore's "non-disciplinary" discharge, and that Newsday did not violate its contract with the Union by terminating Altamore's employment. The arbitrator found that Altamore, after initially refusing to undergo an independent examination, ultimately submitted to an examination by a neurologist, neutral to the parties, who, in agreement with the other doctors, concluded that he was totally disabled.

The attorney-client relationship between Altamore and Friedman was governed by a retainer agreement that called for $2,500 on account and an hourly fee of $150. Friedman's total fee, for the 12 sessions and related work and briefs, came to $19,962, which Altamore paid. On August 26, 1987, after the arbitrator ruled in Newsday's favor, Altamore, expressing dissatisfaction with Friedman's representation, wrote to Friedman for a refund of the $19,962, stating that he failed to represent him properly.

Friedman wrote back, refuting that allegation. On October 10, 1989, Altamore wrote to the Grievance Committee for the Tenth Judicial District, complaining of Friedman's representation. He stated that Friedman, as his attorney, did not protect his rights against Newsday or act in good faith, but acted unethically. He said that Friedman did not know the facts and had to obtain them from the Union and from Newsday. He alleged that Friedman worked against him, in complicity with

the Union, and expanded the hearings, running up his fee in what Altamore characterized as a "time scam". He asserted that Friedman procrastinated, was unprepared, did not properly address the issues, allowed the Union-Newsday arbitrator to violate the laws and, in all, did not deserve or earn his fee for what Altamore asserted to be an unfair hearing conducted by a biased arbitrator.

By letter dated November 20, 1989, the Nassau County Bar Association Conciliation Committee Chair (to whom the Grievance Committee had referred the matter) wrote to Altamore, stating that the Committee would assume jurisdiction of his complaint, provided both he and Friedman were willing to submit to a determination that "will be final and binding upon both sides". The letter included an admonition that following arbitration "[a] judgment may thereafter be entered in the Office of the County Clerk with the same effect as a judgment after trial before a judge", and offered to answer any questions that Altamore might have. Both Altamore and Friedman signed stipulations stating that they were voluntarily consenting to the submission of their dispute "to binding arbitration before the Conciliation Committee of the Nassau County Bar Association", and that "[t]he parties further stipulate that any determination of the panel will be final and binding upon both parties and a judgment may be entered thereafter in the Office of the County Clerk with the same effect as a Judgment After Trial".

Altamore and Friedman were given notice of the hearing date, in a writing, which stated, once again, that any determination of the Nassau County Bar Association Conciliation Committee would be final and binding on both sides, and that "[a] judgment may thereafter be entered in the Office of the County Clerk with the same effect as a judgment after trial before a Judge".

The hearing was conducted on February 7, 1990, and was continued on March 6, 1990. The continuance letter to Altamore included yet another statement as to the binding nature of the arbitration. Alan E. Wolin accompanied Altamore on the second day of the arbitration hearing, and testified as an expert on Altamore's behalf.*

On March 12, 1990, the Conciliation Committee issued the following decision: "A hearing having been held before a duly

---

* In September 1989 Altamore had retained Wolin to attempt to overturn the Newsday-Union arbitration award. That award is not under review here.

constituted panel of this Committee on March 6, 1990, at which both the complainant and respondent were heard and had a full and complete opportunity to and did in fact present all evidence in support of their respective positions, and due consideration having been held thereupon; it is the decision of this Committee that the following award be made: After review of testimony of parties including complainants' 'expert witness', A. Wolin, Esq., it is determined that respondent, Ronald A. Friedman, Esq., performed the services for which he was retained at the agreed upon hourly rate. The file has been closed and returned to the Grievance Committee for the Tenth Judicial District".

Immediately after this decision was rendered, Altamore wrote to the Nassau County Bar Association disputing the result, terming it biased, and stating that he would refuse to comply with it. Although he now asserts that he presented his claim at the arbitration panel without the assistance of counsel, he referred in his letter to the opinion of his attorney, Mr. Wolin, who, Altamore said, testified before the panel and confirmed, as to the Newsday-Union arbitration, "that Friedman should not have proceeded to arbitrate a case which is inconsistent with what he was hired to do".

Approximately two months later Altamore commenced the instant action against Friedman to recover damages for legal malpractice, asserting many of the allegations that he made earlier, notably, that Friedman failed him as his attorney by being unprepared, misdirected, wasteful, and inadequate. Although the allegations in the malpractice complaint are more sophisticated than Altamore's complaint before the Conciliation Committee, both recitations embody what are, at the core, claims of attorney malpractice.

■ CPLR 7501 authorizes parties to submit a dispute to arbitration and confers jurisdiction on the courts to enforce the award. We are satisfied that Altamore and Friedman voluntarily submitted the dispute to binding arbitration, and that, under the facts before us, the arbitration award should be given preclusive effect so as to bar Altamore's legal malpractice action.

It has been long and well established that the award of an arbitrator constitutes a bar to a lawsuit brought on the same claim (see, *Brazill v Isham,* 12 NY 9, 15; *New York Lbr. & Wood Working Co. v Schnieder,* 119 NY 475; *Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.],* 43 NY2d 184;

*see generally,* Domke, Commercial Arbitration §§ 31.02, 39.04 [Wilner rev ed]; Rodman, Commercial Arbitration § 21.21). Preclusion following arbitration is, of course, to be determined on a case-by-case basis *(see,* Siegel, NY Prac § 456, at 690 [2d ed]), and has been given effect when appropriate *(e.g., Luppo v Waldbaum, Inc.,* 131 AD2d 443; *Dimacopoulos v Consort Dev. Corp.,* 158 AD2d 658; *Allstate Ins. Co. v Toussaint,* 163 AD2d 444).

The question of whether to accord preclusive effect to a prior determination depends generally on a number of factors that we shall consider, including the identity of issues, the fullness and fairness of the parties' opportunity to litigate the issue at bar, the realities of the arbitral proceedings, including the incentive to proceed to arbitration, and actual scope of the arbitration, as well as the presence and participation of counsel, the foreseeability of future litigation, the extent to which a matter was necessarily or implicitly decided in the arbitral forum (even if not actually litigated), the likelihood of inconsistent results, and the opportunity to present evidence and cross-examine witnesses *(see, Ryan v New York Tel. Co.,* 62 NY2d 494, 500; *Clemens v Apple,* 65 NY2d 746; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65; *Koch v Consolidated Edison Co.,* 62 NY2d 548, *cert denied* 469 US 1210; *Reich v Cochran,* 151 NY 122, 127; *Pray v Hegeman,* 98 NY 351; *Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304; *Liss v Trans Auto Sys.,* 68 NY2d 15). There are also basic policy considerations, notably, the question of fairness, the finalization of disputes, the conservation of judicial resources, and the goals of uniformity *(see generally,* Carlisle, *Getting A Full Bite Of The Apple: When Should The Doctrine Of Issue Preclusion Make An Administrative Or Arbitral Determination Binding In A Court Of Law,* 55 Fordham L Rev 63 [1986]; Neuberger, *Res Judicata: Promise And Limitations In Non-Labor Arbitrations,* 27 Arb J 113 [1972]; Note, *Res Judicata/Collateral Estoppel Effect Of A Court Determination In Subsequent Arbitration,* 45 Alb L Rev 1029 [1981]).

Applying the relevant standards, we conclude that, under the circumstances before us, there is an identity of issues between the malpractice action and the fee arbitration *(see, Ryan v New York Tel. Co.,* 62 NY2d 494, *supra),* and that there is no support for Altamore's claim that he was denied a "full and fair opportunity" to litigate the issue in the fee arbitration *(Kaufman v Lilly & Co.,* 65 NY2d 449, 455).

Altamore's complaint in the malpractice action mirrors the

contentions that he raised as a basis for the fee arbitration. They relate to the same transaction and the same alleged failures of his former attorney, whom he charged with incompetence, faithlessness, and neglect. Given the realities of the fee arbitration and the evident scope of the proceeding, it is clear that both Altamore and Friedman entered into the fee arbitration willingly, in order to adjudicate finally the nature and quality of Friedman's legal performance. The acknowledged provisions that called for a "binding" arbitration were manifest, repeated in writing, and signed. Under the circumstances, it was entirely foreseeable that the fee arbitration was designed and entered into by the parties as a device to end the dispute, rather than as a prelude to yet another chapter *(see, Clemens v Apple,* 65 NY2d 746, *supra; see also, Zupan v Firestone,* 91 AD2d 561, *affd* 59 NY2d 709 [medical malpractice claim precluded based upon a prior arbitration]).

Altamore argues that because we are bereft of any transcript or minutes of the fee arbitration, we are unable to determine what was before the panel. By its very nature, however, an arbitration hearing is not conducted with the formalities and records of legal proceedings, nor, typically, are arbitrators expected or encouraged to render extensive decisions or fact-finding recitations *(see,* Shell, *Res Judicata And Collateral Estoppel Effects Of Commercial Arbitration,* 35 UCLA L Rev 623, 632 [1988]). The record is complete enough to conclude, and it readily establishes, that both sides were heard and that Altamore himself couched the issue before the arbitrator in terms of Friedman's purported lack of competence. On that issue, Altamore's attorney, Wolin, testified as Altamore's expert. This claim, and Wolin's supporting expert testimony before the arbitration panel, embraces the foundation of Altamore's malpractice action, and fatally undermines his contention that the panel lacked authority to render a decision that would legally bar a subsequent malpractice suit.

Under established case law, "[a] judicial determination fixing the value of a professional's services necessarily decides that there was no malpractice *(Blair v Bartlett,* 75 NY 150)" *(Kagan Meat & Poultry v Kalter,* 70 AD2d 632; *see also, Hunt v Godesky,* 189 AD2d 854). In the case before us, the same principles apply. Since there was a binding agreement to arbitrate, there was an identity of issues, and the parties stipulated that the arbitration award would have the same effect as a judicial determination, upon which a judgment could be entered. Under the circumstances, Altamore may not

limit the preclusive effect of the arbitration award to the question of whether Friedman merely expended a certain number of hours. The issue of Friedman's competence was reasonably and plainly comprehended to be within the scope of the dispute submitted to arbitration *(see generally,* 23 Carmody-Wait 2d, NY Prac § 141:54; Spatt, *Res Judicata and Collateral Estoppel,* 42 Arb J [No. 2] 61 [June 1987]).

The issues involving conflicts over professional services and those in malpractice actions are necessarily intertwined. In New York, attorneys found to be negligent may not reduce the client's recovery against the attorney by the amount of the agreed fee *(see, Campagnola v Mulholland, Minion & Roe,* 76 NY2d 38). Moreover, malpractice is a defense to an action to recover for professional services *(see, Kissimmee Mem. Hosp. v Wilson,* 188 AD2d 802), and legal malpractice actions have been dismissed on the strength of prior adjudications involving fee disputes *(see, Haynes v Kuder,* 591 A2d 1286 [DC App]).

In *Chisholm-Ryder Co. v Sommer & Sommer* (78 AD2d 143) the client was barred from bringing a legal malpractice action after he had lost a fee dispute case in which he could have, but did not, raise a malpractice defense. There, as here, that prior action "necessarily determined that services were performed by the attorneys for the client and that compensation was due them and it is the nature of that claim, not its form, which controls here and estops the client from maintaining the [malpractice] action" *(Chisholm-Ryder Co. v Sommer & Sommer, supra,* at 146). The Court stated that a different holding would destroy rights established in the first proceeding and result in inconsistent determinations. A parallel rule exists in dental malpractice cases. In *Zupan v Firestone* (91 AD2d 561, *affd* 59 NY2d 709, *supra),* the Court dismissed the plaintiff's malpractice action based upon a prior arbitration award in which the arbitrators found that the dentist's services to the plaintiff were *inadequate* and reduced the dentist's fee.

Our decision also draws support from *Grace & Co. v Tunstead, Schechter & Torre* (186 AD2d 15) in which the Court concluded that because the fee dispute and the legal malpractice action arose from the same transaction, the award of fees after an informal hearing necessarily included the finding of no malpractice *(see generally,* 23 Carmody-Wait 2d, NY Prac §§ 141:177-141:181).

The case before us is stronger in compelling preclusion,

considering that in *Grace & Co.,* the client argued that there was a statement placed on the record, without objection, that the hearing would not affect the merits of the legal malpractice action. Here, there was no such statement or understanding. On the contrary, Altamore, in the fee arbitration, based his claim on Friedman's purported lack of competence, and offered his attorney's expert testimony in support.

Altamore, in arguing against preclusion, has hypothesized as to the legal effect of an arbitration panel ruling that an attorney did *not* earn all or part of his or her fee. We need not and do not address this hypothetical question, or set forth the circumstances under which a malpractice action may arguably survive a fee arbitration determination. It is enough to say that our ruling is based on what occurred in the case before us, and we conclude that the document before us is plainly worded and patently sufficient to be accorded preclusive effect under the circumstances here.

Based on all of the existing considerations, we conclude that the Supreme Court properly granted the motion to dismiss the malpractice action.

■ The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment *(see,* CPLR 5501 [a] [1]). Accordingly, the appeal from the order is dismissed, and the judgment is affirmed.

BALLETTA, J. P., ROSENBLATT, MILLER and JOY, JJ., concur.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the defendant is awarded one bill of costs.