OPINION OF THE COURT
Jack M. Battaglia, J.
This case raises questions concerning the relationship between New York’s Used Car Lemon Law, General Business Law § 198-b, and article 2 of the Uniform Commercial Code (Code) — specifically, whether a buyer who is awarded a refund after Lemon Law arbitration may also seek and receive damages for repair costs, and, if so, whether and how an arbitrator’s award is to be given preclusive effect in a later judicial action for damages.
Lenworth Williams is suing Planet Motor Car, Inc. (Planet) for repair costs and other loss resulting from the purchase of a 1996 model Mercedes from Planet in September 2000. At the April 23, 2001 trial, Mr. Williams appeared and testified, as did Planet’s Manager, Mandoh Eltopy. The court reserved decision, pending final resolution of arbitration proceedings instituted by Mr. Williams pursuant to the Used Car Lemon Law.
*24 Under the Lemon Law arbitration program, a hearing was held on March 31, 2001. The arbitrator rendered a decision in Mr. Williams’ favor on April 16, and the decision was mailed by the administrator on May 4. By order to show cause dated July 31, and returnable August 9, Planet sought to vacate the arbitrator’s award pursuant to CPLR 7511. In an order filed October 18, 2001, Justice Luther V. Dye denied Planet’s motion to vacate the award.
The Used Car Lemon Law was enacted in 1984, and is modeled on the New Car Lemon Law enacted the previous year, General Business Law § 198-a. The statute requires that a used car dealer give a consumer a written warranty that covers parts specified in the statute (§ 198-b [b] [1], [2]). The duration of the warranty varies according to the vehicle’s mileage at the time of the sale; in this case, because the mileage was 78,673, the warranty was for the earlier of 60 days or 3,000 miles (§ 198-b [b] [1] [b]).
The warranty must require that the dealer repair a covered part that has failed, or reimburse the consumer for the reasonable cost of repairing it (§ 198-b [b] [2]). Moreover, if the dealer “fails to correct a malfunction or defect as required by the warranty * * * which substantially impairs the value of the used motor vehicle to the consumer after a reasonable period of time, the dealer shall accept return of the used motor vehicle from the consumer and refund to the consumer the full purchase price * * * including sales * * * tax, less a reasonable allowance for any damage not attributable to normal wear or usage” (§ 198-b [c] [1]).
The consumer is given the option of submitting any dispute under the law to binding arbitration under a program administered by the Attorney General (§ 198-b [f] [3]).
“Such alternate arbitration shall be conducted by a professional arbitrator or arbitration firm appointed by and under regulations established by the attorney general. Such mechanism shall ensure the personal objectivity of its arbitrators and the right of each party to present its case, to be in attendance during any presentation made by the other party and to rebut or refute such presentation. In all other respects, such alternate arbitration mechanism shall be governed by article seventy-five of the civil practice law and rules.” (Id.)
The constitutionality of the similar arbitration provisions in the New Car Lemon Law, General Business Law § 198-a (k), *25 was upheld in Motor Vehicle Mfrs. Assn. v State of New York (75 NY2d 175 [1990]; see also Matter of State of New York v Ford Motor Co., 74 NY2d 495, 502-503 [19893; Lyeth v Chrysler Corp., 929 F2d 891 [2d Cir 1991]; Motor Vehicle Mfrs. Assn. v Abrams, 899 F2d 1315 [2d Cir 1990]).
The Attorney General has promulgated extensive regulations to govern arbitration proceedings under the two Lemon Laws. (13 NYCRR ch VIII, part 300.) The regulations provide for limited discovery, 13 NYCRR 300.9, and representation by counsel (id. § 300.10). The hearing must “afford each party a full and equal opportunity to represent his/her case.” (Id. § 300.12 [a], [b], [c].) Time periods are specified for written submissions, the scheduling of the hearing, and the administrator’s review. (Id. §§ 300.7, 300.16.)
In the matter of Mr. Williams and Planet Motor Car, it appears from the arbitrator’s award that Planet was represented by counsel at the hearing. The award summarizes the evidence introduced by Mr. Williams and by Planet, and states several findings, including: “The problem is one covered by the used car warranty”; “at least one problem still exists * * * the vehicle vibrates strongly and increasingly as vehicle gets warmer”; “[t]he problem(s) which still exist(s) substantially impairs the value of the car to the consumer”; “[t]he problem(s) is/are not a result of the consumer’s abuse, neglect or unreasonable modification or alteration of the car.” Planet was directed to refund the purchase price of the vehicle.
“It is settled that the doctrine of res judicata is applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim * * * ‘Claim preclusion’ refers to the bar against relitigating a claim or a cause of action * * * ‘Issue preclusion’ is more limited, barring only the relitigation of a discrete factual or legal issue.” (Matter of Ranni [Ross], 58 NY2d 715, 717 [1982].)
“The question of whether to accord preclusive effect to a prior determination depends generally on a number of factors that we shall consider, including the identity of issues, the fullness and fairness of the parties’ opportunity to litigate the issue at bar, the realities of the arbitral proceedings, including the incentive to proceed to arbitration, and actual scope of the arbitration, as well as the presence and participation of counsel, the foreseeability of *26 future litigation, the extent to which a matter was necessarily or implicitly decided in the arbitral forum (even if not actually litigated), the likelihood of inconsistent results, and the opportunity to present evidence and cross-examine witnesses * * *
“By its very nature, however, an arbitration hearing is not conducted with the formalities and records of legal proceedings.” (Altamore v Friedman, 193 AD2d 240, 245-246 [2d Dept 1993].)
“The doctrine of election of remedies is related to res judicata, but more by affinity than by blood.” (David D. Siegel, NY Prac § 218, at 343 [3d ed].) The doctrine is relevant here because of the rule at common law that “[a] buyer cannot * * * recover both damages and purchase price when a case has been tried on the basis of rescission.” (Weigel v Cook, 237 NY 136, 142 [1923].) This general rule was codified as to the sale of goods in the old Sale of Goods Act (former Personal Property Law art 5, added by L 1911, ch 571, amending L 1909, ch 45, art 5, §§ 80, 81), providing the buyer with remedies for breach of warranty “at his election” of either damages or rescission but not both (former Personal Property Law § 150 [1], [2]). As will appear, the doctrine has since been modified by the CPLR and the Uniform Commercial Code.
Three questions present themselves: may Mr. Williams maintain an action for any other remedy, having received through arbitration a refund of the purchase price; if so, is there a remedy for the repair costs incurred prior to the return of the vehicle to Planet; and is Planet precluded from disputing the breach of warranty that would be the basis for such a remedy?.
Although the statute does not explicitly preclude an arbitrator’s damages award for breach of warranty, it is implicit in the provision on “failure to honor warranty,” which speaks only of the refund remedy (§ 198-b [c] [1]). (There is also provision for a replacement with a comparably priced vehicle, if the consumer agrees.) Characterizing the New Car Lemon Law as having created a “new cause of action and a new remedy,” the Court of Appeals stated that “[c]onsequential damages, which are recoverable in a legal action for breach of contract, are not recoverable under the statute.” (Motor Vehicle Mfrs. Assn. v State of New York, supra, at 183, 187; see also Matter of Dawson (General Motors Corp.], 158 AD2d 756, 758 [3d Dept 1990]; Kepenis v Ro-Zap Enters., 179 Misc 2d 874, 876 [Sup Ct, Saratoga County 1998].) Lemon Law arbitrators are “limited to *27 awarding one of two remedies,” i.e., refund or replacement. (Motor Vehicle Mfrs. Assn. v State of New York, supra, at 186.)
One limitation to the application of res judicata is that “the court must have had jurisdiction over the omitted cause of action for the bar to obtain.” (White v State of New York, 161 Misc 2d 938, 941 [Ct Cl 1994].) Although, generally, a party is not permitted to seek different relief in separate actions arising out of the same transaction (see Ordenana v Weber, 269 AD2d 580, 581 [2d Dept 2000]; Slavin v Fischer, 160 AD2d 934, 935 [2d Dept 1990]), “[r]es judicata is inapplicable * * * where petitioners were statutorily precluded from obtaining complete relief, i.e., compensatory damages” in the administrative proceeding. (Matter of Kondracke v Blue, 277 AD2d 953, 955 [4th Dept 2000]; see also Pfeiffer v Allstate Ins. Co., 136 AD2d 532, 532-534 [2d Dept 1998].) The policy underlying the doctrine of res judicata and its relatives “is that with respect to a single matter there should not be more than a single lawsuit, so as to prevent harassment and vexatious litigation.” (Pfeiffer at 533.) That policy is not threatened when the plaintiff is merely given the opportunity to collect full compensation. (Id. at 533-534.)
Perhaps more importantly, the statute itself states that its remedy is not exclusive. “Nothing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law” (§ 198-b [d] [2]; see Armstrong v Boyce, 135 Misc 2d 148, 152-153 [Watertown City Ct 1987]).
As to election of remedies, CPLR 3002 (e) overrules Weigel v Cook (supra; see A. J. Fleres, Inc. v Larkin Welder & Mach. Corp., 36 Misc 2d 79, 82 [Sup Ct, Kings County 1962]; David D. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3002:24, at 605). “CPLR 3002(e) permits the court to make the plaintiff completely whole * * * Plaintiff wants to be rid of the transaction, restored to status quo, and also recompensed for everything else lost along the way.” (Siegel at 605.)
The drafters of article 2 of the Uniform Commercial Code purposely avoided use of the word “rescission” and adopted instead “revocation of acceptance” in order to avoid any suggestion of election of remedies. (UCC 2-608, Comment 1.) “[T]he buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach.” (Id.; see also Abele v Bayliner Mar. Corp., 11 F Supp 2d 955, 961 [ND Ohio 1997].)
*28 It seems reasonably clear, therefore, that Mr. Williams may maintain an action for damages, notwithstanding his arbitration proceeding for a refund of the purchase price. Now the question is whether there is a nonduplicative damage remedy for the cost of repairs made to the vehicle because of a breach of warranty. Courts in other states have found their respective “lemon laws” to allow a range of damages, including repair costs, in addition to a refund of the purchase price. (See, e.g., Pecor v General Motors Corp., 150 Vt 23, 547 A2d 1364 [1988]; Maserati Autos. v Caplan, 522 So 2d 993 [Fla Ct App 1988].)
And lower courts in New York have given buyers both a refund and damages for repairs without noting an issue. (Ireland v J.L.’s Auto Sales, 156 Misc 2d 845, 852 [Arcadia Just Ct 1992], remanded on other grounds 156 Misc 2d 853 [Wayne County Ct 1993]; Lupa v Jock’s, 131 Misc 2d 536, 540 [Oswego City Ct 1986]; Natale v Martin Volkswagen, 92 Misc 2d 1046, 1050 [Utica City Ct 1978].)
Notwithstanding abandonment of the election of remedies doctrine, the Code establishes a different remedy regime for goods accepted than for goods rejected. For goods accepted, where the nonconformity is a breach of warranty, the measure of damages is usually “the difference * * * between the value of the goods accepted and the value they would have had if they had been as warranted.” (UCC 2-714 [2].) “In a proper case any incidental and consequential damages under [§ 2-715] may also be recovered.” (UCC 2-714 [3].) Repair costs have been considered compensable as damages for breach with respect to an accepted automobile. (Carbo Indus. v Becker Chevrolet, 112 AD2d 336, 340 [2d Dept 1985]; see also Tacoma Athletic Club v Indoor Comfort Sys., 79 Wash App 250, 261, 902 P2d 175, 181 [1995].)
Where the buyer has rightfully rejected the goods or justifiably revoked acceptance, the buyer may cancel the contract, may recover so much of the purchase price as has been paid, and may recover damages based on cover or the contract price/ market price differential. (UCC 2-711.) Both cover damages and market price damages may also be accompanied by any incidental or consequential damages. (UCC 2-712 [2]; 2-713 [1].)
Incidental damages “include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected * * * and any other reasonable expense incidental to the * * * breach.” (UCC 2-715 [1].) *29 Consequential damages “include * * * any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.” (UCC 2-715 [2] [a].) Repair costs have been considered compensable as either incidental damages or consequential damages. (Tacoma Athletic Club v Indoor Comfort Sys., supra; 1 White and Summers, Uniform Commercial Code § 10-4, at 572 [4th ed]; Lanners v Whitney, 247 Ore 223, 235, 428 P2d 398, 404 [1967].) They have been awarded when the buyer has revoked acceptance and been given a refund of the purchase price. (Lanners at 236-237, at 404.)
In Vernon v Potamkin Cadillac Corp. (118 AD2d 698, 700 [2d Dept 1986]), the Second Department awarded the buyer a refund of the purchase price, together with “expenses in connection with financing the purchase” as incidental damages. The Court refused other damages, however, including rental and storage charges, because they were not sufficiently tied to the breach, and because the dealer “was never given the opportunity to repair, or replace, or accept a return of the vehicle.” (Id. at 700.)
Without explanation, the Court also rejected an award for loss of use, citing a Third Department decision in Rayhn v Nemer Volkswagen Corp. (77 AD2d 394 [3d Dept 1980]). In that case, the Court gave the buyer of an automobile “a complete refund of the purchase price,” but “having elected to rescind the contact, the [buyer] may not also seek damages for loss of use of the vehicle.” (Id. at 397.) In both Rayhn and Vernon, which relied upon Rayhn, it appears that the loss of use claim related to a period of time after the buyer revoked acceptance of the vehicle. The decisions may be considered vestiges of the election of remedies doctrine, or simply as holding that, under such circumstances, loss of use does not constitute incidental or consequential damages.
In Carbo Indus. v Becker Chevrolet (supra, at 340), a case that involved an accepted vehicle, the Second Department said that “towing charges and other charges incurred * * * in diagnosing the problem with the car could have been found to constitute compensable incidental damages.” As noted, the Court allowed the repair costs as damages for breach of warranty, i.e., “a reasonable cost in rendering the car usable.” (Id.)
In sum, the court is not aware of a recent case that has denied a buyer a recovery for repair costs simply because the buyer obtained a refund of the purchase price, and there is *30 support for awarding the repair costs. They are probably best viewed as “reasonable expense [s] incident to the * * * breach” (UCC 2-715 [1]) that qualify as incidental damages when demonstrated to be both necessary and reasonable. (See Vernon v Potamkin Cadillac Corp., supra.) When the repairs are unsuccessful, the costs are similar to diagnostic costs. (See Carbo Indus. v Becker Chevrolet, supra.) When the repairs are successful, they have conferred a benefit upon the repurchasing seller. In neither situation are they duplicative of a refund of the purchase price.
Having determined that Mr. Williams may have a claim for his repair costs, in addition to a refund of the purchase price, Mr. Williams must still establish that he is entitled to them. The Used Car Lemon Law does not explicitly provide for judicial enforcement or remedy for breach of its mandated warranty. There are provisions, however, that envision court action, providing that “[i]n an action brought to enforce the provisions of this article, the court may award reasonable attorney’s fees to a prevailing plaintiff’ (§ 198-b [f] [5]), and for a four-year limitations period for “[a]ny action brought pursuant this article” (§ 198-b [f| [6]; see also Kaltz v Stein, 133 Misc 2d 258, 260 [Suffolk Dist Ct 1986] [awarding plaintiff repair costs for breach of Used Car Lemon Law warranty]). Having failed to provide other direction, the Legislature must have intended that the warranty be enforced, and its breach remedied, in the manner of written warranties under the Uniform Commercial Code. At the same time, the Code should be applied in Lemon Law warranty cases so as to give effect to the particular policy concerns and goals of the Law, which include “providing] consumers with greater protection than that afforded by * * * express limited warranties.” (Matter of Hynson [American Motors Sales Corp.], 164 AD2d 41, 45 [2d Dept 1990].)
It is obviously no coincidence that the standard for determining a refund under the Lemon Law and the standard for permitting revocation of acceptance under the Code are the same. Thus, under the Lemon Law, the dealer is required to accept return of the car only for a “malfunction or defect * * * which substantially impairs the value of the used motor vehicle to the consumer” (§ 198-b [c] [1]). Under the Code, the buyer may revoke acceptance of a unit “whose non-conformity substantially impairs its value to him.” (UCC 2-608 [1].)
But there are significant differences as well between the Lemon Law and revocation of acceptance under the Code. Whereas the buyer bears the burden of proving a substantial *31 impairment of value under the Code, the dealer bears the burden of negating substantial impairment as an affirmative defense under the Lemon Law (§ 198-b [c] [1] [a]; Jandreau v La Vigne, 170 AD2d 861, 862 [3d Dept 1991]). Under the Code, there are additional requirements for revocation of acceptance, including explanation for the buyer’s acceptance and a time limit on revocation. (UCC 2-608 [1] [a], [b]; [2].) The Lemon Law, on the other hand, eases the consumer’s burden with presumptions based upon the number of attempts at repair and the amount of time the vehicle is out of service (§ 198-b [c] [2]).
In the interest of the policy concerns and goals of the Lemon Law, as well as other “basic policy considerations, notably, the question of fairness, the finalization of disputes, the conservation of judicial resources, and the goals of uniformity” (Altamore v Friedman, supra, at 245), an arbitrator’s decision on a consumer’s claim for refund of the purchase price should preclude further litigation of the breach of warranty and revocation issues under the Code. And so, where, as here, the consumer has been awarded a refund of the purchase price after Lemon Law arbitration, the right to revoke acceptance under UCC 2-608 for nonconformity with a warranty should be deemed established in a subsequent action for a Code remedy, e.g., incidental or consequential damages.
All of the considerations that the Second Department outlined in Altamore v Friedman (supra) in deciding whether or not to accord preclusive effect to a prior determination appear to weigh in favor of giving the Lemon Law arbitrator’s determination preclusive effect: the identity of the issues, particularly substantial impairment of value, the final and fair opportunity to litigate the issues before the arbitrator; the availability of counsel; the incentive to litigate, given the refund remedy; and the likelihood of inconsistent results. The same considerations warrant giving preclusive effect as well to an arbitrator’s finding against the consumer, but it is not necessary here to explore how that might be reflected in subsequent litigation between the parties.
At the trial, Planet Motor Car asserted two grounds for rejecting Mr. Williams’ claim for repair costs, but both were resolved against Planet in the arbitration proceeding. Planet asserted that it only warranted the motor, axle and transmission of Mr. Williams’ car, and, indeed, it appears that Planet did not in fact give Mr. Williams the written warranty mandated by the Lemon Law. However, the statute is quite *32 clear that, “if a dealer fails to give the written warranty required by this article, the dealer nevertheless shall be deemed to have given said warranty as a matter of law” (§ 198-b [d] [1]). And the arbitrator determined that there was breach of that warranty.
Planet also maintained that Mr. Williams could not prevail on his claim because, although he paid for the vehicle, he was not the record owner. According to Planet, and confirmed by the arbitrator’s summary of the evidence at the hearing, this issue was raised in the arbitration. It also appears to have been the basis for Planet’s motion to vacate the arbitrator’s decision. Both the arbitrator and Justice Dye rejected the argument, and no different result is called for here.
Mr. Williams established his costs for diagnostic services, repairs and parts in the total amount of $2,393.96, with proof sufficient for that purpose in the Small Claims Part. (CCA 1804.) He testified that these costs were incurred in attempts to cure the same malfunctions that were the basis for his Lemon Law claim, but he did not make a showing that specific “covered parts” were involved. (See § 198-b [b] [2].) The arbitrator’s findings that there were “3 or more repair attempts for the same problem,” and that “[t]he problem is one covered by the used car warranty,” cannot, without more, be considered determinative of Mr. Williams’ right to reimbursement for those specific repair costs. The finding of breach of warranty for the identified “problem” (i.e., vibration) is entitled to preclusive effect, but the repair costs must be tied to the “problem.”
Moreover, the vehicle was also covered by a “warranty of serviceability” under Vehicle and Traffic Law § 417 that the vehicle “is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.” (Ritchie v Empire Ford Sales, NYLJ, Nov. 7, 1996, at 30, col 3 [Yonkers City Ct]; Barilla v Gunn Buick-Cadillac-GMC, 139 Misc 2d 496, 499-503 [Oswego City Ct 1988].) The scope of this warranty is not determined by specific parts, but by performance. (Natale v Martin Volkswagen, supra, at 1050.) “A prima facie showing of a defect raises a presumption that it existed at the time of delivery.” (Ritchie v Empire Ford Sales, supra, at 30, col 4.) Mr. Williams testified that the vibration was a problem beginning the day after delivery, and the arbitrator experienced the vibration four months later during a test drive that was permitted by the regulations. (13 NYCRR 300.12 [f].)
*33 The totality of the evidence supports a conclusion that the Lemon Law warranty and the Vehicle and Traffic Law “warranty” were breached. The repair costs paid to a facility to which Mr. Williams was referred by Planet when he reported the problem, and the diagnostic and repair costs paid to a Mercedes dealer, totaling $1,991.10, are determined to be damages resulting from breach of the warranties.
Mr. Williams also seeks compensation for loss of use of the vehicle and for the time he lost from work in attempting to have the car repaired. As noted, there is a real question as to whether loss of use is compensable, but, in any event, Mr. Williams presented no evidence to support an award of damages. (Roundtree v Singh, 143 AD2d 995, 995 [2d Dept 1998].) The lost time for repairs is not compensable.
Interest on a judgment for breach of contract is to be awarded from the “earliest ascertainable date the cause of action existed.” (CPLR 5001 [b].) Under the Code, a cause of action for breach of warranty accrues at the earliest “when tender of delivery is made.” (UCC 2-725 [2].)
Judgment for claimant for $1,991.10, with interest from September 23, 2000, plus disbursements.